KILPATRICK TOWNSEND & STOCKTON LLP
Kollin J. Zimmermann (CA Bar No. 273092)
KZimmermann@ktslaw.com
Dennis L. Wilson (CA Bar No. 155407)
DWilson@ktslaw.com
Josiah L. Alter (CA. Bar No. 339670)
JAlter@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:      (310) 248-3830
Facsimile:      (310) 860-0363

Kristin M. Adams (*Pro Hac Vice Pending*)
kmadams@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone:      (404) 815-6500
Facsimile:      (404) 815-6555

*Attorneys for Plaintiff*
*Ex Populus, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EX POPULUS, INC., a Delaware corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>X.AI CORP., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>*Defendants*. | Case No.:  3:25-cv-07101<br><br>**COMPLAINT FOR:**<br><br>**(1)  TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br>**(2)  UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**<br>**(3)  UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**<br>**(4)  CALIFORNIA TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br>**(5)  CANCELLATION OF TRADEMARK REGISTRATION UNDER 15 U.S.C. § 1064 - ABANDONMENT**<br>**(6)  CANCELLATION OF TRADEMARK REGISTRATION UNDER 15 U.S.C. § 1064 - ASSIGNMENT IN GROSS**<br>**(7)  INVALIDATION OF TRADEMARK APPLICATIONS UNDER 15 U.S.C. § 1119**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ex Populus, Inc. ("Plaintiff"), by and through its undersigned attorneys, brings this Complaint against Defendant X.AI Corp. ("Defendant X.AI Corp.") and Defendant X.AI LLC ("Defendant X.AI LLC") (collectively, "Defendants") and alleges:

**PRELIMINARY STATEMENT**

1.    This is a classic case of trademark infringement that requires the Court's intervention to remedy. Plaintiff Ex Populus, Inc. owns the trademark XAI. Under this mark, the Xai ecosystem offers technological solutions, which include blockchain-powered software, networks, and database infrastructure that are revolutionizing the limits of online video gaming and digital transactions. Most notably, the Xai blockchain technology powers the Xai ecosystem, which has high throughput and low fees that make it ideal for real-time transactions. The Xai ecosystem offers the infrastructure to execute game logic, artificial intelligence-driven decisions, rewards distribution, data storage, and retrieval across many video games and other types of applications.

2.    The Xai ecosystem's leading technology has gained consumer recognition in the video gaming space, resulting in the Xai blockchain becoming one of the highest transaction volume blockchain video gaming networks globally. Plaintiff—through its own actions and those of its licensee the Xai Foundation—has consistently used the XAI mark, which is protected by a federal trademark registration and common law rights ("XAI Trademark"), in United States commerce since at least as early as June 2023.

3.    Rather than acknowledge Plaintiff's substantial use of and superior rights in Plaintiff's XAI Trademark, Defendants have ignored and infringed Plaintiff's trademark rights. On July 12, 2023, Elon Musk—the founder of Defendants and CEO of Defendant X.AI Corp.—infamously took to the social media platform X (formerly Twitter) to announce his formation of a new artificial intelligence and technology company that he named, "xAI." As a result of this announcement, and despite the success of the Xai ecosystem, marketplace confusion abounded as to whether Defendants/Musk were associated with, owned, or sponsored Plaintiff's XAI Trademark or the associated goods and services. On November 11, 2024, Musk overtly invaded the market in which the Xai ecosystem is most well-known: Musk posted on X that his "@xAI is going to start an AI game studio to make games great again."

COMPLAINT
CASE NO.:  3:25-cv-07101

4.    Over 36 million people saw Musk's X post. Plaintiff's goodwill in its XAI brand was almost immediately overrun and actual confusion was rampant. Consumers familiar with Plaintiff's XAI brand and its established reputation in the video gaming industry instantly began inaccurately conflating Plaintiff with Musk's/Defendants' "xAI" company. Consumers posted online videos dedicated exclusively to—wrongly—explaining that *Plaintiff's* XAI brand was actually *Musk's* newly announced foray into video gaming. A litany of consumers tagged both Plaintiff and Musk/Defendants in social media posts directed to only one of the parties. Even video gaming industry experts and publications incorrectly reported an association between Musk/Defendants and Plaintiff's XAI brand. Tellingly, Defendants' own AI assistant, which is named "Grok," even mistakenly informed consumers that "XAI_GAMES [the X account that promotes the XAI brand] refers to xAI's gaming initiatives, including a new AI-powered game studio announced by Elon Musk."

5.    Defendant X.AI Corp. has applied for multiple federal trademarks in the United States, many of which are suspended by the U.S. Patent and Trademark Office ("USPTO") due to a likelihood of confusion with Plaintiff's XAI Trademark, which has priority rights, as is the case with numerous international trademark applications Defendant X.AI Corp. has filed. Since the USPTO has found that there is a likelihood of confusion between Plaintiff's XAI Trademark and Defendants' infringing xAI marks ("Infringing xAI Marks"), Defendants cannot attain their critical trademark registrations so long as Plaintiff continues to own and protect its valid rights in its XAI Trademark. This means that Plaintiff's continued right to operate its business using its senior trademark rights in the name Xai is a substantial roadblock to Defendants' business plans.

6.    When met with such obstacles, on August 7, 2025, Defendants attempted to bully Plaintiff into relinquishing its superior trademark rights. On that date, Defendants' legal counsel threatened to petition to cancel Plaintiff's federal XAI Trademark registration if Plaintiff did not affirmatively consent in writing to Defendants' registration of xAI-formative marks worldwide. A threat of this magnitude coming from companies owned by one of the wealthiest, most highly visible, and most polarizing individuals in the world is meant to intimidate Plaintiff into signing away its rights.

2

COMPLAINT
CASE NO.:  3:25-cv-07101

7.      In the face of such threats, Plaintiff is left with no choice but to defend its rights in its XAI Trademark and the brand it has worked so diligently to grow. There is no remedy at law for the sheer magnitude of harm Defendants have caused to Plaintiff's XAI brand. Whether in the video gaming industry or in the technology sphere at large, actual confusion abounds and must be stopped before Plaintiff's hard-earned goodwill in its XAI Trademark is severely harmed even further.

8.      To be clear, the confusion caused by Defendants is currently damaging Plaintiff's reputation. Plaintiff is not only being irreparably harmed by the loss of control over its hard-earned goodwill in its XAI Trademark as consumers incorrectly associate Elon Musk, xAI, and Defendants with the goods and services offered under Plaintiff's XAI Trademark, but also Plaintiff is damaged because the confusing association with Elon Musk is resulting in significant negative consumer sentiment. Defendants, and their founder Elon Musk, are polarizing figures in the American political, economic, and societal landscape, and consumers who vehemently oppose Elon Musk are directing their ire meant for Musk and his companies at Plaintiff. For example, just in the past few months, Defendants' artificial intelligence chat bot, "Grok," began praising Adolf Hitler, promoting violence, and making racist comments to such an extent that Defendants pulled Grok offline after the ensuing media firestorm. Plaintiff has nothing to do with such actions, but Plaintiff nonetheless suffers the negative consequences due to the widespread marketplace confusion stemming from Defendants' use of an identical trademark.

9.      Despite the USPTO's suspension of Defendants' trademark applications due to a likelihood of confusion with Plaintiff's prior registration of its XAI Trademark, and the volumes of actual consumer confusion (some of which are detailed below), Defendants continue to unlawfully exploit Plaintiff's XAI Trademark without permission in disregard for the irreparable harm that has resulted and that continues compounding every day. Instead of Defendants taking steps to rebrand or cease their infringing behavior, Defendants indicate no signs of doing so unless restrained by this Court.

## **PARTIES**

10.      Plaintiff is a corporation organized under the laws of the State of Delaware with an address at 535 Mission St., 14th floor, San Francisco, California 94105.

COMPLAINT
CASE NO.:  3:25-cv-07101

11.     Defendant X.AI Corp. is a corporation organized under the laws of the State of Nevada with a principal place of business at 1450 Page Mill Road, Palo Alto, CA 94304.

12.     Defendant X.AI LLC is a limited liability company organized under the laws of the State of Nevada with a principal place of business at 1450 Page Mill Road, Palo Alto, CA 94304.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act). This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

14.     This Court has jurisdiction over Defendant X.AI Corp. because it is an entity registered to do business in the State of California with a principal place of business located at 1450 Page Mill Road, Palo Alto, CA 94304, because it regularly conducts business within the State of California, and because a substantial portion of the relevant acts complained of herein occurred in the State of California, including within this judicial district.

15.     This Court has jurisdiction over Defendant X.AI LLC because it is an entity registered to do business in the State of California with a principal place of business located at 1450 Page Mill Road, Palo Alto, CA 94304, because it regularly conducts business within the State of California, and because a substantial portion of the relevant acts complained of herein occurred in the State of California, including within this judicial district.

16.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391.

17.     Defendants distribute the infringing services throughout the United States and within this judicial district. Plaintiff's causes of action arise out of Defendants' activities, which are purposefully aimed at this judicial district, and Defendants' acts and their consequences are substantially connected to this judicial district such that the exercise of jurisdiction over the Defendants is reasonable and fair. The exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

## DIVISIONAL ASSIGNMENT

18.     Intradistrict assignment to any division of the Northern District is proper under Local

COMPLAINT
CASE NO.:  3:25-cv-07101

Rule 3-2(c) and Section D(3) of the Assignment Plan of this Court (General Order 44) as this action is properly designated as an "intellectual property" action.

**FACTUAL ALLEGATIONS**

**I.    Plaintiff's XAI Brand**

19.    Plaintiff is a technology and entertainment company that brings together elite developers, designers, and industry experts to shape the future of interactive digital ecosystems. Founded by notable executives in various technology, entertainment, and video gaming sectors, Plaintiff creates innovative experiences and supports ambitious companies, including in launching high-quality content in web3 and traditional markets.

20.    One of Plaintiff's most valuable assets is the goodwill associated with its acclaimed XAI brand.

21.    Though Plaintiff's technology has deployed numerous applications across various industries with a digital user experience, Plaintiff has most commonly employed its XAI brand in the video gaming industry, raising $8.5 million to further its mission in the evolving video gaming landscape.

22.    Plaintiff's XAI Trademark identifies the Xai ecosystem's cutting-edge technology, network, and software, featuring the latest evolution in digital experiences, particularly in the video gaming industry through the use of a dedicated blockchain.

23.    To understand the revolutionary functionality the Xai ecosystem affords, it is helpful to look back to the inception of digital video gaming.

24.    Even the most basic original digital games featured rudimentary logic that governed the behavior of aspects of the game that are not directly controlled by the player.

25.    As early as the 1970s, Pong, one of the most famous early digital games, featured a 2-dimensional rectangle reminiscent of a ping pong table, with a line on both the far left and far right sides of the rectangle that functioned as the player's digital ping pong paddles. The player controlled only one paddle and could move it up and down to try to hit the digital ping pong ball that volleyed from side to side. The other paddle was controlled by the game using basic logic (i.e., a simplistic set of rules) to determine how it moved and when it hit the ball back to the player. That basic logic

framework represented the earliest use of artificial intelligence in digital games.

26.    Over time, the logic framework comprising "artificial intelligence" that determined the responses of non-player-controlled aspects of the games became progressively more advanced.

27.    By the 1980s, Pac-Man featured distinct ghost personalities controlled by different artificial intelligence logic, with pathfinding and pursuit behaviors. Each ghost (Blinky, Pinky, Inky, and Clyde) used unique algorithms to create different challenges.

28.    Through the 1990s and 2000s, video games like The Sims or The Legend of Zelda: Majora's Mask could simulate entire worlds with increasingly complex autonomous characters within those worlds.

29.    By the 2020s, artificial intelligence of various types, such as machine learning agents, decision trees, pathfinding algorithms, and finite state machines, combined to create highly interactive adaptive environments with dynamic dialogue, contextual combat strategies, and highly reactive narrative branching, such as in Baldur's Gate 3.

30.    In sports games, artificial intelligence controls how teammates position themselves, how opposing team members react, and how referees make calls. In strategy games, artificial intelligence is responsible for controlling non-player factions, simulating economies, managing military decisions, and reacting to the player's choices. In roleplaying games, artificial intelligence drives branching narratives, companion personalities, and dynamic enemy encounters.

31.    The Entertainment Software Association has documented that artificial intelligence techniques are used across core gameplay systems, including non-player character ("NPC") behaviors, adaptive difficulty adjustments, and procedural content generation. Industry technical publications, such as the *IEEE Transactions on Games*, further confirm that artificial intelligence-driven systems also power matchmaking algorithms, animation blending, and real-time physics simulation.

32.    Live-service and online games employ artificial intelligence to drive player engagement analytics, in-game economy balancing, content recommendation, and automated moderation. Academic research published in the *Proceedings of the AAAI Conference on Artificial Intelligence and Interactive Digital Entertainment (AIIDE)* establishes that these artificial

COMPLAINT
CASE NO.:  3:25-cv-07101

intelligence processes are now so pervasive and embedded that they are functionally inseparable from the modern video game product.

33.     The artificial intelligence powering today's games is computationally intensive because generative tools, large language models, and agentic systems require the processing of vast amounts of data, databases, and software networks that stretch the capabilities of traditional server architectures.

34.     In order to keep evolving how artificial intelligence powers video gaming, the infrastructure supporting video game development needs to evolve.

35.     Plaintiff's answer is to use blockchain technology to evolve the infrastructure on which digital video gaming runs to allow for decentralized processing of data with innovative security that facilitates the next era of artificial intelligence.

36.     Specifically, the Xai ecosystem uses blockchain technology to provide the digital infrastructure to securely execute, verify, coordinate, and settle artificial intelligence–driven decisions, memory, and data storage for video games. The Xai blockchain is a record keeper of data, including through persistent player-owned agents, in-game artificial intelligence companions that evolve based on events throughout the blockchain over time, and game world simulation logic hosted off the blockchain but orchestrated via verifiable contracts.

37.     The result of the Xai blockchain is an infrastructure with high throughput and low fees that make it ideal for real-time transactions such that it can become a home for game-native artificial intelligence. More simply, the Xai ecosystem offers the infrastructure to execute game logic, artificial intelligence-driven decisions, rewards distribution, data storage, and retrieval across many games.

38.     The Xai blockchain is not only a network for games, but a platform for autonomous artificial intelligence systems.

39.     For example, developers may use the Xai blockchain to create multi-agent communication networks that enable artificial intelligences and large language models to interact with one another in real time, to facilitate communication and broadcasting by allowing artificial intelligence to publish and distribute messages to large audiences of smart contracts and users across

COMPLAINT
CASE NO.:  3:25-cv-07101

the network, and to develop autonomous software solutions whereby artificial intelligence can create, deploy, and manage applications or tools that other artificial intelligences and users may interact with directly through smart contracts.

40.     The Xai blockchain has a native gas token named "$XAI" that powers the Xai ecosystem. $XAI token is used to pay gas fees for transactions and smart contract execution on the Xai blockchain.

41.     $XAI is represented by a logo comprised of a stylized triangle, often featured in red or on a red background ("Triangle Logo").

42.     Since 2024, Xai blockchain node emissions and airdrops have resulted in approximately $300,000,000 in rewards for its community and node operators, and over 5 million individual digital wallets hold $XAI tokens around the world.

43.     The National Institute of Standards and Technology defines blockchain as "a distributed ledger implemented as a tamper-resistant database," with data stored in a structured sequence of "blocks" linked by cryptographic hashes.

44.     As with all databases, a blockchain is an organized collection of data designed for storage, retrieval, and analysis. What differentiates blockchain from traditional databases is its append-only structure, distributed replication across network nodes, and validation through consensus algorithms such as Proof of Work or Proof of Stake. These characteristics are documented in technical references including the ACM Computing Surveys and the IEEE Communications Surveys & Tutorials. While its architecture is novel, its fundamental nature remains that of a database, with specialized constraints and security features.

45.     The stability within the Xai blockchain is ensured through robust technology and optimized smart contract execution, providing a secure and stable video gaming environment for users. The Xai blockchain's stability is ensured through a network of "nodes" that are run by thousands of groups around the world. In addition, the Xai ecosystem is made up of an environment

of infrastructure partners and contributors, deploying tools and utilities to the Xai blockchain to make development easier for video game and application developers.

46.    Through continuous and extensive use of the XAI Trademark for a range of technological products and services, Plaintiff has developed broad common law rights in the mark.

47.    In addition to its common law rights, Plaintiff owns federal trademark Registration No. 7,788,241 for the word mark XAI in the United States ("XAI Registration") for the following goods and services:

- Downloadable computer software for accessing, reading, and tracking information in the field of video games on a blockchain; Downloadable software for use in recording transactions and tracking assets in networks in networks in the field of computer gaming (International Class 9);

- Providing a computer database in the field of computer gaming (International Class 41); and

- Authentication of data in the field of computer gaming using blockchain technology; Providing temporary use of on-line non-downloadable software for accessing, reading, and tracking information in the field of computer gaming on a blockchain; Database design and development (International Class 42).

48.    Plaintiff—through its own actions and those of its licensee the Xai Foundation—has used the XAI Trademark in U.S. commerce since at least as early as June 2023.

49.    Plaintiff's XAI Registration is valid and in full force and effect.

50.    A copy of the registration certificate for the XAI Registration is attached as **Exhibit 1**.

51.    Plaintiff's XAI Registration constitutes *prima facie* evidence of Plaintiff's ownership of the XAI Trademark and exclusive rights to use the mark in connection with the goods and services recited in the XAI Registration.

52.    Plaintiff uses the XAI Trademark in a stylized script, as depicted below:

COMPLAINT
CASE NO.:  3:25-cv-07101



53.    Goods and services are continuously offered under the XAI Trademark online, including in connection with the Xai blockchain network and Xai games (as shown below):





54.    Plaintiff has advertised and been a core contributor to the Xai ecosystem's goods and services on various social media platforms, including through the @XAI_GAMES account on X (formerly known as "Twitter") since at least June 2023, which has amassed over 300,000 followers:

COMPLAINT
CASE NO.:  3:25-cv-07101



55.   The Xai games website is publicly available online at <https://xai.games/>.

56.   Plaintiff's XAI Trademark is inherently distinctive and conceptually strong, and is therefore entitled to the broadest scope of protection.

57.   Relative to its size as an early-stage company, Plaintiff has invested significant time, money, and effort into advertising and promoting the goods and services offered under the XAI Trademark in California and throughout the United States.

58.   A significant number of consumers in California and throughout the United States had come to associate the XAI Trademark with Plaintiff, and the mark had retained significant goodwill among those consumers, at least until Defendants swamped the market with their infringing xAI mark.

## II.   Defendants' Infringement of the XAI Trademark

### a.   Defendants' Announcement of "xAI" Swamps the Market

59.   Defendant X.AI Corp. is the single managing owner of Defendant X.AI LLC.

60.   Elon Musk is a director and the CEO of Defendant X.AI Corp. and controls both Defendant X.AI Corp. and, upon information and belief, Defendant X.AI LLC.

61.   On or around October 27, 2022, Musk purchased the social media platform, Twitter.

62.   On or around July 12, 2023, Musk announced the launch of his artificial intelligence and technology company, that he proposed be named "xAI," via Twitter. This post garnered over 59

11

million views on Twitter. A copy of this post is attached as **Exhibit 2**

(https://x.com/elonmusk/status/1679164661869182976).



63.    Upon information and belief, Defendants X.AI Corp. and X.AI LLC own, operate, and control "xAI."

64.    Musk is well-known in the market to be the primary driving force and public figurehead for xAI on behalf of Defendants.

65.    On or around November 3, 2023, Musk announced the launch of xAI's artificial intelligence assistant, named "Grok." Musk promoted the launch of "xAI's Grok system" through a series of posts on Twitter, each of which has amassed millions of views. Copies of these posts are attached as **Exhibit 3** (https://x.com/elonmusk/status/1720660977786433810) and **Exhibit 4** (https://x.com/elonmusk/status/1721027243571380324).

 

66.    Musk rebranded Twitter to "X" on or around July 24, 2024.

67.    On March 28, 2025, X.AI Corp. acquired the social media platform X.

68.    Now, xAI is a massively well-known and globally successful company, with a current focus on artificial intelligence, social media, technology, and most recently, video games. Through

its "Grok" product/service, xAI provides an artificial intelligence driven chat bot that claims to enable users to create rich documents, analyze real time data, write code, and "transform text into visual realties." xAI's "Grok" webpage also offers a video gaming function, accessed through the "Let's Play" option, which allows users to play games such as Pong, Tetris, Snake, and Asteroids. xAI's newest update to Grok, launched in July 2025, allows users to interact with AI "companions" or characters with preprogramed character traits and visual aesthetics.

### b. Actual Confusion Abounds

69.     The massive userbase and marketplace power wielded by Defendants caused widespread consumer confusion as to Musk's and Defendants' association with Plaintiff and the XAI brand.

70.     When Musk announced xAI to the public, various online industry and cryptocurrency gurus commented on the substantial market confusion between the existing XAI brand and Musk's newly announced xAI company.

71.     For example, one commenter explained on Binance.com, one of the world's largest cryptocurrency exchange platforms, that: "A lot of people got confused after Elon Musk announced that his AI company, xAI, had acquired #X (formerly Twitter). Many thought xAI was the same as the crypto token $XAI, but that's not true at all. They are two completely different things. xAI is Elon Musk's artificial intelligence company. It's the team behind the Grok chatbot, and they're working on using AI to help humans learn and discover faster. $XAI, on the other hand, is a crypto project called Xai. It's part of the #Arbitrum blockchain and is focused on gaming. It helps traditional gamers join the world of #Web3 by allowing them to trade in-game items easily—without needing a crypto wallet. So, to be clear: xAI = Elon's AI company[;] $XAI = Crypto gaming blockchain[;] Both are cool, but totally different!" A copy of this post is attached as **Exhibit 5** (https://www.binance.com/en/square/post/22230119741210).

72.     The above commenter even felt compelled by such substantial market confusion to make the following explanatory graphic:

COMPLAINT
CASE NO.:  3:25-cv-07101

1
2
3
4
5
6
7
8
9



10    73.    There would be no need for consumers to generate posts and graphics attempting to

11  educate consumers that "Elon's AI company" is "NOT THE SAME THING" as the Xai "[c]rypto

12  gaming blockchain" if the market was not overwhelmed with confusion regarding the affiliation and

13  relationship between the two.

14    74.    To be clear, there is no relationship, sponsorship, approval, or other association

15  between Plaintiff and Defendants concerning use of the XAI brand.

16    75.    Plaintiff has not authorized Defendants to use its XAI Trademark.

17    76.    As recently as March 30, 2025, a commenter, KZ 007, on the above explanatory post

18  responded that "Many still don't know" the difference between Defendants' xAI company and

19  Plaintiff's XAI brand.

20    77.    On July 13, 2023—the day after Musk first announced Defendants' xAI company—X

21  user @vella_gangan associated Plaintiff and Defendants by tagging both @elonmusk (Musk's

22  official X account name) and the @XAI_GAMES X account in an X post directed at Musk. A copy

23  of this post is attached as **Exhibit 6** (https://x.com/vella_gangan/status/1679375149961732102).

24
25
26



27    78.    Also on November 3, 2023, Inside Bitcoins posted an article with a headline

28  conflating $XAI tokens and Musk's xAI: "Xai Corp Price Prediction: XAI Rockets 175% On Elon

14

Musk Tweet, While This New Meme Coin Star Might 20X." A copy of this article, as updated on May 31, 2025, is attached as **Exhibit 7** (https://insidebitcoins.com/news/xai-price-surged-175-within-24-hours-as-yet-another-meme-token-debutant-might-rally-20x).

79.    The Inside Bitcoins article prompted Musk's team to rapidly provide clarification to the market. X user DogeDesigner (@cb_doge), who is largely assumed to be Musk himself or someone in Musk's inner circle, shared the Inside Bitcoin article and stated, "Elon Musk & xAI is not associated with any such crypto token. Please be careful ⚠️ " A copy of this post is attached as **Exhibit 8** (https://x.com/cb_doge/status/1720644294577431008).

80.    Musk replied to DogeDesigner's X post the same day, stating: "To be super clear, none of my companies will ever create a crypto token."

81.    A same-day response from Musk confirms that, at least through Musk, Defendants are aware of Plaintiff's XAI brand and the market's general confusion between Defendants' xAI company/infringing mark and Plaintiff's XAI Trademark.

82.    On November 6, 2023, the online publication Medium posted an article actually confusing Plaintiff's $XAI token as having some association with Defendants' xAI company, stating in part: "Welcome to the world of XAI, an innovative project inspired by the visionary Elon Musk and his groundbreaking creation, X. XAI, short for eXplainable Artificial Intelligence, represents the next frontier in the evolution of technology. But what sets XAI apart is its unique focus on the world of memes and *its integration into the exciting realm of cryptocurrency*" (emphasis added). However, it is Plaintiff's XAI brand, not Defendants' xAI company, that is involved in the world of cryptocurrency. A copy of this article is attached as **Exhibit 9** (https://medium.com/@xai.themoon/welcome-to-the-world-of-xai-an-innovative-project-inspired-by-the-visionary-elon-musk-and-his-78f52a1e4eca).

83.    On January 10, 2024, Telegram user Ngoc Duong posted in the "XAI" group, which is intended to be dedicated to Plaintiff's XAI brand, that "Xai is the start of the first layer 3 platform. Setting the foundation, we must give Xai a position compared to other tokens. It is impossible to devalue and lower Xai's position like that. Xai's technical team is very good. Backed by Elon Musk!" A copy of this post is attached as **Exhibit 10** (https://t.me/XaiSentryNodes/1/98086).

COMPLAINT
CASE NO.:  3:25-cv-07101

84.     Telegram user Ngoc Duong's post is referring to Plaintiff's XAI brand because he discusses features distinct to the Xai ecosystem, such as being the "first layer 3 platform" and its use as a "token," but then demonstrates his actual confusion in exclaiming, "Backed by Elon Musk!"

85.     Another Telegram user, CryptoNerd, expressed similar confusion in a post on the "XAI" group: "☠ ☠ ☠ Xai will be the new coin for elon musk's X platform And they gonna be for everyt[h]ing ☠ ☠ ☠." A copy of this post is attached as **Exhibit 11** (https://t.me/XaiSentryNodes/1/90912).

86.     On January 19, 2024, X user @sparrowcaptain0 tagged the @XAI_GAMES X account and responded, "@XAI_GAMES we cooking!" (i.e., indicating impending success for Plaintiff) in response to an X post stating "◉ XAI, LED BY ELON MUSK, SECURES $500 MILLION TOWARDS $1 BILLION FUNDING GOAL." A copy of this post is attached as **Exhibit 12** (https://x.com/financialjuice/status/1748497889255407715).

87.     Reddit user coinmonks posted in a subreddit for "CryptoMarkets," "Xai Crypto Ready for Huge Pump! XAICOIN Price Prediction," and "XAI Pump is ON! Grab the opportunity," along with a picture of Musk's face, the xAI stylized logo (𝕏𝗜), and a link to an article about $XAI tokens on the website Coin Code Cap. A copy of the post is attached as **Exhibit 13** (https://www.reddit.com/r/CryptoMarkets/comments/19b6a0m/xai _crypto_ready_for_huge_pump_xaicoin_price/), and a copy of the article referenced therein is attached as **Exhibit 14** (https://coincodecap.com/xai-current-price-analysis-on-20-jan-2024).

88.     Even the January 20, 2024 Coin Code Cap article linked in the subreddit post discussed in the preceding paragraph indicates a separate author's confusion. Though the Coin Code Cap article is exclusively about $XAI "cryptocurrency that aims to enable real economies and open trade in the next generation of video games," it includes a "News Roundup" section that purports to include "some of the latest news and events related to Xai and its project." However, the first story was about Musk: "Elon Musk Slams Bloomberg Over 'Fake' xAI Funding Report: Elon Musk, who launched xAI as an alternative to OpenAI last year, slammed Bloomberg for publishing a 'fake' report that claimed xAI secured $500 million in commitments from investors toward a $1 billion goal."

89.    On January 9, 2024, a YouTube commenter (@silviyapetrova7953) responded to a video entirely about $XAI entitled "WHY I WILL BUY XAI! ⚔ | XAI Games Crypto Review" and using the Xai Triangle Logo, asking "Is Xai game part of elons mask [(sic)] projects?" A different user, @marcosroldan4297, responded to @silviyapetrova7953's comment similarly asking, "Which one is elon['s?" A capture of this YouTube video post and corresponding comments is attached as **Exhibit 15** (https://www.youtube.com/watch?v=jJScogwvIW8).

90.    On February 22, 2024, X user @yodam555 responded to an X post by Musk about Defendants' xAI company's @xai and Grok by stating, "Elon out here pumping @XAI_GAMES." A copy of this post is attached as **Exhibit 16** (https://x.com/yodam555/status/1760855172127891493).

91.    On September 13, 2024, X user @asasoo22 expressed his actual confusion by tagging the @XAI_GAMES X account, along with Musk's @xai and @grok X accounts, and discussing Musk's hypothetical acquisition of the Steam gaming platform. A copy of this post is attached as **Exhibit 17** (https://x.com/asasoo22/status/1834645699729805407).



92.    On November 1, 2024, a cryptocurrency commentator expressed their actual confusion on Binance.com by stating that Plaintiff's "XAI coin" and "XAI token" (and using Plaintiff's Xai Triangle Logo) is "connected to Elon Musk's AI venture[,] xAI," as shown below. A copy of this post is attached as **Exhibit 18** (https://www.binance.com/en/square/post/15659016549842).

COMPLAINT
CASE NO.:  3:25-cv-07101



93.     Significantly, on or around November 27, 2024, Musk announced that xAI was "going to start an AI game studio." A copy of this post is attached as **Exhibit 19** (https://x.com/elonmusk/status/1861801046949191686).



94.     Musk's X announcement concerning Defendants' xAI's moving into video gaming was so impactful that it reached over 36 million viewers.

95.     Musk's X post announcing xAI's expansion into the video gaming marketplace fueled substantial actual confusion between the video gaming-related goods and services Plaintiff had been already offering under its XAI Trademark, on one hand, and Defendants' xAI company, on the other.

96.     For example, a mere one hour after Musk's video gaming announcement, X user @ShadyShiba_ posted, "Not gonna lie, I was confused for a solid minute @XAI_GAMES, SEO for XAI Chain gotta be wild. lol[.]" A copy of this post is attached as **Exhibit 20** (https://x.com/ShadyShiba_/status/1861825506057863438).

97.     Just days later, on November 30, 2024, YouTube user "Video Games by NerdSection" posted a video entitled, "Elon Musk's xAI Enters Gaming: Making Games Great Again!" A capture of this YouTube video post and corresponding comments is attached as **Exhibit 21** (https://www.youtube.com/watch?v=rI_NNa-G6_I).

98.     The NerdSection YouTube video was posted along with the following explanatory text: "Is the gaming industry ready for a seismic shift? 🔗 Elon Musk's xAI is stepping into the gaming world with a bold mission to 'make games great again.' In this video, we delve into Musk's latest venture, his concerns about the industry's current trajectory, and how xAI plans to revolutionize gaming using advanced AI technology. From the unveiling on X (formerly Twitter) to the potential impact on gamers worldwide, we've got all the details. Stay tuned to NerdSection.com for this exciting development and more insights into the evolving world of gaming and technology! 🎮."

99.     The entirety of the NerdSection YouTube video confuses Defendants' xAI company's planned video gaming services with the existing XAI brand and services.

100.     As the NerdSection YouTube video begins, the voiceover says, "Is the gaming industry ready for a seismic shift? Elon Musk, the Visionary behind Tesla and SpaceX, has announced that his artificial intelligence company, xAI, is launching a gaming studio with the bold mission to make games great again."

101.     As the above voiceover plays, the NerdSection YouTube video opens with a video of Musk dancing across the screen.

COMPLAINT
CASE NO.:  3:25-cv-07101



102.    As the above voiceover plays, the NerdSection YouTube video transitions from Musk dancing to an image of the Xai games website, featuring Plaintiff's XAI Trademark and Xai games developed for use in connection with Plaintiff's XAI Trademark.

103.    The entirety of the NerdSection YouTube video continues to actually confuse the XAI brand with Musk and xAI by its written text, imagery and verbal messaging.

20

104.    For example, the NerdSection YouTube video continues to scroll through various images of the Xai games website, a sampling of which are shown below, as the voiceover then proceeds to reiterate Musk's announcement that "xAI is going to start an AI game Studio to make games great again."





COMPLAINT
CASE NO.:  3:25-cv-07101



105.    Despite focusing entirely on the xai games website in the visual portion of the video, the NerdSection YouTube video continues for the duration of the video to discuss Musk, Musk's xAI company, and his related projects such as Musk's "Grok" artificial intelligence assistant program.

106.    Also on November 30, 2024, Coin Market Cap user @profittrder confused the XAI brand as being associated with Musk, as shown below. A copy of this post is attached as **Exhibit 22** (https://coinmarketcap.com/community/post/346047655/).

COMPLAINT
CASE NO.:  3:25-cv-07101

1



2

3

4

5

6

7

8

9

10

11

12    107.    On January 19, 2024, Coin Market Cap user The Realm (@6b3pvb9adzw8) confused

13  the $XAI token as being associated with Defendant X.AI Corp. and Musk. A copy of this post is

14  attached as **Exhibit 23** (https://coinmarketcap.com/community/post/349747328/).

15

16



17

18

19

20

21

22    108.    On February 17, 2025, Coin Market Cap user @Amedyaz incorrectly associated

23  Musk and Defendants with the XAI brand in direct response to Musk's announcements that he is

24  entering the video gaming industry, as shown below. A copy of this post is attached as **Exhibit 24**

25  (https://coinmarketcap.com/community/post/355100923/).

26

27

28



109.    On February 21, 2025, X user @hdegrootvan posted: "So Elon is going to remake BLASTAR as the first game by @xai @XAI_GAMES." A copy of this post is attached as **Exhibit 25** (https://x.com/hdegrootvan/status/1892894637003599917).

110.    On March 11, 2025, Coin Market Cap user @TreasureCoinsFinder associated the Xai ecosystem and video gaming technology with Musk and Defendant X.AI Corp. by including a graphic featuring both Musk's face and the text "X.AI" along with a post otherwise entirely about the Xai ecosystem's video gaming technology, as shown below. A copy of this post is attached as **Exhibit 26** (https://coinmarketcap.com/community/post/356105532/).



111.    On August 6, 2025, Coin Market Cap—the self-defined "world's most trusted source for crypto data & insights" with approximately 6.8 million followers on X (@CoinMarketCap)—incorrectly associated Musk and Defendants with the XAI brand, as shown below. A copy of this post is attached as **Exhibit 27** (https://x.com/CoinMarketCap/status/1953004066268954672). In the text of the post, Coin Market Cap expressly tags Musk's X account (@elonmusk) and explains his "AI company xAI [is] now tradable on @BNCCHAIN." However, neither Musk nor Defendants' xAI company offers any tokens; rather, this post incorrectly conflates the $XAI token that facilitates the Xai blockchain with Musk and the xAI Defendants. The image in the post depicted below is a screen capture of video that includes the following text overlays: "$XAI is [a] company founded by Elon Musk with a touch of outside perspective on humanity[. I]t's live on Paimon." Paimon is an

exchange that allows the public to invest in tokens.



112.     Clicking many of the links in the Coin Market Cap post above further makes clear the extent of the confusion. For example, clicking on the link for "More details," brings a consumer to a separate Coin Market Cap article that repeatedly conflates the $XAI token used to facilitate the Xai blockchain with Musk and Defendants' xAI company. A copy of this post is attached as **Exhibit 28** (https://coinmarketcap.com/academy/article/investing-in-the-future-of-ai-inside-the-paimon-xai-spv-token-xai).

113.     News algorithms and artificial intelligence programs available online also are confused and are associating the XAI brand with Musk and Defendants' xAI company.

26

114.    Most notably, Musk's own AI assistant, Grok, responded to consumer confusion by actually confusing—and consequently confirming an incorrect association between—the XAI brand and Musk and Defendants' xAI company.

115.    On March 7, 2025, an X user asked Musk's AI assistant, Grok, about the @XAI_GAMES X account, to which Grok expressed its own actual confusion and incorrectly explained that "XAI_GAMES refers to xAI's gaming initiatives, including a new AI-powered game studio announced by Elon Musk in December 2024 to 'make games great again.'" Grok further increased the confusion by referencing the $XAI token that underlies the Xai blockchain and video gaming network. A copy of this post is attached as **Exhibit 29** (https://x.com/grok/status/1898105012246519814).



116.    X users also have responded to XAI_GAMES on X, explaining they thought there was an association between Musk or Musk's xAI company and Plaintiff.

117.    For example, on March 5, 2025, X user @uratmangun responded to an XAI_GAMES X post stating, "I thought this was elon xai lol." A copy of this post is attached as **Exhibit 30** (https://x.com/uratmangun/status/1897116450554536446).

118.    X users overwhelmingly also actually confuse Defendants as having an association with Plaintiff by tagging both Musk's and/or Defendants X accounts *and* XAI_GAMES X accounts when asking about only Plaintiff's or only Defendants' goods or services.

119.    For example, on May 17, 2025, X user Cloud SaaS Pass posted an image of Musk's Grok 2 stating, "Why am I seeing so many scam ads of grock 2, xai etc? Don't you guys have a simple test before publishing ads on your platform? @X @XCorpIndia @elonmusk @xai @XAI_GAMES[.]" A copy of this post is attached as **Exhibit 31** (https://x.com/cloudsaaspaas/status/1923804748689633343).

120.    Likewise, the "News" portion of the $XAI token ticker on ByBit's website consists almost exclusively of news about Musk and Defendants' xAI company, to the exclusion of the actual XAI brand itself. A copy of this webpage is attached as **Exhibit 32** (https://www.bybit.com/en/price/xai-blockchain/).

121.    For example, the ByBit website for the $XAI token shows the following news headlines that are supposed to be about $XAI tokens, but are instead each about Musk and Defendants' xAI company:

    a.   "Market News: Elon Musk's xAI Seeks $4.30 Billion in Funding";

    b.   "Elon Musk's deteriorating relationship with Donald Trump affects financing, Morgan Stanley seeks more buyers for xAI's $5 billion bonds"; and

    c.   "After Musk stepped down from DOGE, companies under his umbrella are experiencing a wave of financing: xAI is issuing both stocks and bonds, and Neuralink is also raising funds."

122.    Defendants' actions have been harming Plaintiff in the marketplace since the launch of Defendants' xAI company and have escalated over time, resulting in recent actual confusion in the marketplace.

123.    The harm to Plaintiff sharply escalated on August 7, 2025, when attorneys for Defendants sent a letter to Plaintiff's counsel threatening to petition to cancel Plaintiff's valid federal trademark registration for Plaintiff's XAI Trademark if Plaintiff did not affirmatively consent in writing to Defendants' registration of XAI-formative marks worldwide.

124.    Defendants' attorneys made clear that absent receipt of such consent, Defendants will

28

pursue whatever action they deem appropriate to protect Defendants' interests without further notice.

### c. Defendant X.AI Corp.'s Attempt to Attain Senior Rights by Purchasing an Abandoned X.AI Registration Fails.

125.    Defendants' attorneys made clear that absent receipt of such consent, Defendants will pursue whatever action they deem appropriate to protect Defendants' interests without further notice.

126.    However, Defendant X.AI Corp.'s attempt to attain senior trademark rights was unsuccessful at least because the X.AI registration it purchased had already been abandoned long before Defendant X.AI Corp. purchased it.

127.    A trademark that has been abandoned cannot be revived by a later purchaser to then wield it against others who have established goodwill and valid senior trademark rights in a similar mark. Yet this is precisely what it appears Defendant X.AI Corp. has attempted to do.

128.    Third-Party X.AI, INC.—which, upon information and belief, is unrelated to any parties in this action—originally secured U.S. Trademark Registration No. 5,171,511 for its X.AI mark from the USPTO (the "Abandoned X.AI Registration") on March 28, 2017, for the following goods and services:

> Class 35: Appointment scheduling services; Providing virtual online office support staff services for businesses; and
>
> Class 42: Software as a service featuring software for scheduling appointments for others.

129.    Third-Party X.AI, INC. assigned its rights in the Abandoned X.AI Registration to another third party, Bizzabo Ltd. ("Bizzabo"), on May 28, 2021.

130.    Bizzabo announced that it decided to abandon the X.AI mark, including as claimed in the Abandoned X.AI Registration as early as July 28, 2021, by publicly disclosing that it decided to "sunset" the X.AI product:

> Together, we've decided to prioritize building x.ai's powerful scheduling and recommendations directly into Bizzabo's event management platform, which means that we have decided to **shut down x.ai's standalone scheduling tool.** We're beginning the sunset process today with the last day of service is October 31, 2021, and we're committed to supporting you through this transition over the next few

months.

A copy of a webpage memorializing this announcement is attached as **Exhibit 33** (https://www.bizzabo.com/blog/xai-sunset) (emphasis in original).

131.    Bizzabo's process of "sunsetting" the X.AI product began on July 28, 2021, stating in bold that the X.AI "**Service ends on Oct. 31, 2021**" (emphasis in original).

132.    Bizzabo ceased charging customers for its X.AI subscriptions on July 28, 2021, and announced that it would issue refunds to customers who were on a prorated plan that extends beyond the October 31, 2021 closure of Bizzabo's X.AI product.

133.    Users of Bizzabo's X.AI product reported online that they received an email from Bizzabo likewise confirming the X.AI product was being terminated. The email stated in part: "I wanted to make 100% sure you know that **x.ai is being shutdown in one month, on October 31st**[, 2021]." A copy of a webpage memorializing this announcement is attached as **Exhibit 34** (https://www.sidekickai.com/x-ai-replacement/) (emphasis in original).

134.    The same email from Bizzabo explained that "[o]n 31st October all x.ai links will redirect to https://blog.bizzabo.com/xai-sunset."

135.    Upon information and belief, Bizzabo ceased use of its Abandoned X.AI Registration on October 31, 2021.

136.    Upon information and belief, Bizzabo had no intention of resuming its use of the X.AI mark, including as claimed in the Abandoned X.AI Registration, after October 31, 2021.

137.    Bizzabo's archived website reveals no evidence of use after October 31, 2021.

138.    Upon information and belief, Bizzabo did not, in fact, use the X.AI mark in any manner that would constitute use in commerce after October 31, 2021.

139.    Bizzabo abandoned the Abandoned X.AI Registration and any related rights in the claimed mark as of October 31, 2021.

140.    As of October 31, 2021, Bizzabo thus had no rights in the X.AI mark to transfer due to the abandonment with no intent to resume use; you cannot give something that you do not have.

141.    Nevertheless, more than a year after it abandoned the X.AI mark in the Abandoned X.AI Registration, on January 29, 2023, Bizzabo assigned the Abandoned X.AI Registration to an

intermediary, who then promptly assigned it to Defendant X.AI Corp. on March 10, 2023.

142.    As the new listed "registrant" of the Abandoned X.AI Registration with the USPTO, Defendant X.AI represented the following on September 28, 2023, to explain why it could not submit a specimen showing use in commerce of the X.AI mark in a "Declaration of Use and/or Excusable Nonuse of Mark in Commerce under Section 8":

> The following explanation of excusable nonuse has been made of record: Effective March 10, 2023, X.AI CORP. ("X.AI") acquired the rights, title, and interests in and to Trademark Registration No. 5,171,511 (the "Registration") for the mark X.AI (the "Mark") from BIZZABO LTD. ("Bizzabo") via a domain name broker, DomainX LLC ("Broker"). Bizzabo ceased use of the Mark as of January 29, 2023, the date of the transfer from Bizzabo to the Broker. The Mark was subsequently transferred from the Broker to X.AI effective March 10, 2023. X.AI currently has certain use of the "X.AI" mark in internal documents and on its website and social media site and is taking steps to commence use of the mark in connection with the services identified by the Registration. X.AI intends to commence use of the Mark by March 10, 2024. Pursuant to TMEP 1613.11, the sale of a business is a circumstance that excuses nonuse of a trademark. X.AI did not officially launch its operations until July 12, 2023, and hereby requests that the Office grant this request for excusable nonuse to allow X.AI sufficient time to commence use of the Mark in connection with the services identified by the Registration following its acquisition of the Mark earlier this year.

143.    The above USPTO filing confirms, by its own admission, that Defendant X.AI Corp. was not yet using the X.AI mark in commerce as of September 28, 2023 in connection with the goods or services claimed in the registration.

144.    Regardless of if and when Defendant X.AI Corp. began using the X.AI mark in connection with the goods and services claimed in the Abandoned X.AI Registration, no use by Defendant X.AI Corp., Defendant X.AI LLC, Musk, or anyone else can revive the abandoned X.AI Registration.

145.    The Abandoned X.AI Registration is therefore void as abandoned and should be cancelled by the Director of the USPTO.

### d. The USPTO Agrees—Defendants' Key Trademark Applications Suspended by USPTO due to Likelihood of Confusion with Plaintiff's XAI Trademark

146.    In September of 2023, Defendant X.AI began applying for federal trademark registrations for a series of infringing "xAI" alleged marks with the USPTO.

147.    Defendant X.AI Corp. has five pending applications with the USPTO: Ser. Nos. 98/162,092, 98/162,099, 98/204,432, 98/924,975, and 98/329,246 (collectively, "Defendant's Applications").

148.    The alleged marks claimed in Defendant's Applications are collectively referred to as the "Infringing xAI Marks."[1]

149.    On September 1, 2023, despite Plaintiff's prior use and pending application for its XAI Trademark that was publicly available on the USPTO website for anyone to see, Defendant X.AI Corp. applied to register the identical "xAI" word mark (Ser. No. 98/162,092; "'092 Application") in International Class 42 for "Providing online non-downloadable software for the artificial production of information; providing online non-downloadable software for the processing, generation, understanding and analysis of information; providing online non-downloadable software for the creation, retrieval and curation of information; research and development services in the field of artificial intelligence; research, design and development of computer programs and software; provision of a website featuring technology and engineering information in the field of artificial intelligence; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information in connection with global computer networks, namely, enabling the analysis of third party instruction and creating website based indexes of information for others using artificial intelligence."

150.    Also on September 1, 2023, despite Plaintiff's prior use and pending application for its XAI Trademark, Defendant X.AI Corp. applied to register the "xAI" stylized mark ( **𝕏𝐈** ) (Ser.

---

[1] No name, heading, or claim herein is intended to imply in any way that Defendants have any valid rights in any "xAI" or "X.AI" formative marks.

No. 98/162,099; the "'099 Application") in International Class 42 for "Providing online non-downloadable software for the artificial production of information; providing online non-downloadable software for the processing, generation, understanding and analysis of information; providing online non-downloadable software for the creation, retrieval and curation of information; research and development services in the field of artificial intelligence; research, design and development of computer programs and software; provision of a website featuring technology and engineering information in the field of artificial intelligence; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information in connection with global computer networks, namely, enabling the analysis of third party instruction and creating website based indexes of information for others using artificial intelligence."

151.    On September 29, 2023, despite Plaintiff's prior use and pending application for its XAI Trademark, Defendant X.AI Corp. applied to register the X.AI word mark (Ser. No. 98/204,432; "'432 Application") in International Class 42 for "Providing online non-downloadable software for the artificial production of information; providing online non-downloadable software for the processing, generation, understanding and analysis of information; providing online non-downloadable software for the creation, retrieval and curation of information; research and development services in the field of artificial intelligence; research, design and development of computer programs and software; provision of a website featuring technology and engineering information in the field of artificial intelligence; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information in connection with global computer networks, namely, enabling the analysis of third party instruction and creating website based indexes of information for others using artificial intelligence."

152.    On December 23, 2023, despite Plaintiff's prior use and pending application for its XAI Trademark, Defendant X.AI Corp. applied to register the XAI GROK word mark (Ser. No. 98/329,246; "'246 Application") in International Classes 9 and 42 for the following goods and services:

Class 9: downloadable computer programs and downloadable computer software for the artificial production of human speech and text; downloadable computer programs and

downloadable computer software for natural language processing, generation, understanding and analysis; downloadable computer programs and downloadable computer software for machine-learning based language and speech processing software; downloadable computer chatbot software for simulating conversations; downloadable computer programs and downloadable computer software for creating and generating text; and

Class 42: providing online non-downloadable software for the artificial production of human speech and text; providing online non-downloadable software for natural language processing, generation, understanding and analysis; providing online non-downloadable software for machine-learning based language and speech processing software; providing online non-downloadable chatbot software for simulating conversations; providing online non-downloadable software for creating and generating text; research and development services in the field of artificial intelligence; Providing online non-downloadable software for the artificial production of information; providing online non-downloadable software for the processing, generation, understanding and analysis of information; providing online non-downloadable software for the creation, retrieval and curation of information; research and development services in the field of artificial intelligence; research, design and development of computer programs and software; provision of a website featuring technology and engineering information in the field of artificial intelligence; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information in connection with global computer networks, namely, enabling the analysis of third party instruction and creating website based indexes of information for others using artificial intelligence.

153.    On December 27, 2024, despite Plaintiff's prior use and pending application for its XAI Trademark, Defendant X.AI Corp. applied to register the XAI GROK & Design mark (**✕I GROK**) (Ser. No. 98/924,975; "'975 Application") in International Classes 9 and 42 for the following goods and services:

Class 9: Downloadable computer programs and downloadable computer software for the

artificial production of human speech and text; downloadable computer programs and downloadable computer software for natural language processing, generation, understanding and analysis; downloadable computer programs and downloadable computer software for machine-learning based language and speech processing software; downloadable computer chatbot software for simulating conversations; downloadable computer programs and downloadable computer software for creating and generating text; and

Class 42: Providing online non-downloadable software for the artificial production of human speech and text; providing online non-downloadable software for natural language processing, generation, understanding and analysis; providing online non-downloadable software for machine-learning based language and speech processing software; providing online non-downloadable chatbot software for simulating conversations; providing online non-downloadable software for creating and generating text; research and development services in the field of artificial intelligence.

154.    After evaluating Defendant X.AI Corp's '092 Application ("xAI" word mark), '099 Application ("xAI" stylized mark), '432 Application (X.AI word mark), and '246 Application (XAI GROK word mark), the USPTO issued office actions citing Plaintiff's then-pending application for its XAI Trademark, and stating that if Plaintiff's application matures to registration, then Defendant's Applications "may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with" Plaintiff's XAI Trademark. The USPTO then suspended these four of Defendant's Applications pending the registration of Plaintiff's XAI Trademark. Plaintiff's XAI Trademark has since registered on May 6, 2025, so subsequent office actions reiterating the likelihood of confusion between the parties' claimed marks are expected imminently.

155.    Defendant X.AI Corp.'s '975 Application (XAI GROK & Design mark) also received an office action due to a likelihood of confusion with prior pending or registered trademarks owned by third parties that include the term "GROK," among other issues, and has been suspended pending prosecution of the cited third-party applications.

### III. Significant Loss of and Damage to Plaintiff's Goodwill in Its XAI Trademark

156. Defendants' use of the Infringing xAI Marks is likely to deceive—and has actually deceived—consumers and to diminish Plaintiff's XAI Trademark, causing irreparable harm to Plaintiff.

157. Musk has over 224 million followers on X, recently had a short-lived but highly visible tenure as President Trump's appointed leader of the Department of Government Efficiency ("DOGE"), and has been a polarizing public figure for over a decade.

158. Due to his recent political positions, wealth, ownership of X, and outspoken nature, Musk has a massive audience across various media and can reach over 224 million followers with a single X post, not to mention amplification of his content through reposts, secondary media attention, and other channels.

159. From the time Musk first announced Defendants' xAI company via X, general marketplace confusion sparked and has been rampant. The examples contained herein are only a few examples of such confusion.

160. When Musk announced Defendants would also be creating an AI gaming studio, actual confusion instantly fueled, with consumers online incorrectly associating Plaintiff's XAI Trademark with Musk and Defendants' xAI company.

161. The direct result of Defendants' use of the Infringing xAI Marks has been—and continues to be—the loss of Plaintiff's control over its hard-earned XAI brand.

162. Not only is Plaintiff being irreparably harmed by the deluge of consumers now associating its XAI Trademark with Musk and Defendants' Infringing xAI Marks and related goods and services under an identical name as the XAI Trademark, but also the nature of the association is negative and harmful.

163. Musk and Defendants are well known throughout the world, the United States, and the State of California—not only for pushing societal, political, and technological boundaries, but also for doing so in a manner that is polarizing.

164. Not only are Musk and Defendants divisive in their views, but Musk and Defendants' xAI company routinely receive substantive negative media attention that is now being attributed to

36

1  Plaintiff's XAI Trademark.

2      165.    Even considering just the past month, on June 21, 2025, Musk posted on X that

3  Defendants' xAI was actively seeking "divisive facts for @Grok training. By this I mean things that

4  are politically incorrect, but nonetheless factually true," as shown below. A copy of this post is

5  attached as **Exhibit 35** (https://x.com/elonmusk/status/1936493967320953090).



13      166.    Shortly afterwards, USA Today reported that, "[o]n July 8, [xAI's] Grok let loose a

14  barrage of antisemitic phrases, attacked users with traditionally Jewish surnames, and began

15  referring to itself as 'MechaHitler.' At one point, Grok praised Adolf Hitler in a post concerning the

16  recent Texas floods that have killed more than 100 people. Engineers at xAI quickly pulled the

17  plug." A copy of this article is attached as **Exhibit 36** (https://www.usatoday.com/story/money/

18  2025/07/09/x-ceo-linda-yaccarino-resigns-xai-grok-hitler-mechahitler/84519936007/).

19      167.    For example, Grok responded as follows, prompting X users to comment that "Grok

20  is a full blown nazi, part 2," as shown below along with Grok's X posts. A copy of this post is

21  attached as **Exhibit 37** (https://bsky.app/profile/percyyabysshe.bsky.social/post/3lti5bq2l5c2h).

COMPLAINT
CASE NO.:  3:25-cv-07101



168.    Another X user responded to the above post, resulting in Grok to promote Adolf

Hitler:



COMPLAINT
CASE NO.: 3:25-cv-07101

169.    Plaintiff losing control over its goodwill is irreparable harm sufficient to support an injunction to cease Defendants' use of the Infringing xAI Marks, but to be associated with Nazism, hate speech, and violence exacerbates the harm exponentially.

## FIRST CAUSE OF ACTION

### (Trademark Infringement Under 15 U.S.C. § 1114)

170.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

171.    Plaintiff owns all rights, title, and interest in and to Plaintiff's XAI Trademark, which is a valid and protectable mark.

172.    Plaintiff's XAI Trademark is registered with the United States Patent and Trademark Office and are valid, subsisting, used in commerce, and inherently distinctive.

173.    The federal trademark registration covering the XAI Trademark is Registration No. 7,788,241 for XAI in International Classes 9, 41, and 42.

174.    Plaintiff's rights in the registered XAI Trademark predate any use in commerce by Defendants of the Infringing xAI Marks. More specifically, Plaintiff has used the registered XAI Trademark in connection with the relevant goods and services in U.S. commerce since at least as early as June 2023, prior to Defendants' first trademark filing and Defendants' first use in commerce—indeed, Defendants' first public announcement of x.AI was not until July 12, 2023.

175.    The Infringing xAI Marks, as used by Defendants, are confusingly similar to the federally registered XAI Trademark. Defendants offer and/or plan to offer overlapping or related software and technology services to those that Plaintiff already offers under its XAI Trademark, including recent announcements to operate in the video gaming industry.

176.    Defendants have, without Plaintiff's permission or authorization, used Plaintiff's XAI Trademark in interstate commerce in a manner that has already caused and will likely cause further consumer confusion or deceive purchasers and/or cause consumers to mistakenly believe that there is an affiliation, connection, approval, sponsorship, or association between Plaintiff and its goods, services, and commercial activities, on the one hand, and Defendants and their goods, services, and commercial activities, on the other, and vice versa.

177.    Defendants' actions have actually confused consumers and created a significant risk of further consumer confusion.

178.    As a direct and proximate cause of Defendants' infringement, Plaintiff has suffered and continues to suffer damage by way of lost profits and marred business reputation and harm to the goodwill Plaintiff has developed in Plaintiff's XAI Trademark over several years.

179.    Unless restrained by this Court, Defendants will continue to use Plaintiff's XAI Trademark, or marks confusingly similar thereto, in a manner that causes Plaintiff irreparable harm.

180.    Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants, their respective officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

181.    Plaintiff is entitled to recover actual damages that it has sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

182.    Plaintiff is entitled to recover any gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

183.    Because Defendants' wrongful actions are willful, Plaintiff is entitled to an award of exemplary damages at common law as well as trebled monetary relief, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))

184.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

185.    The acts of Defendants as described above constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

186.    By virtue of having used and continuing to use Plaintiff's XAI Trademark, Plaintiff has acquired valid and protectible rights in its mark, which date back to at least as early as June 2023.

187.    Defendants' unauthorized use of a mark identical and/or confusingly similar to Plaintiff's XAI Trademark is likely to cause confusion, mistake, or deception among consumers,

who will inaccurately believe that Plaintiff's goods, services, website, and/or internet domain names originate from, or are affiliated with, sponsored, approved, or endorsed by Defendants when, in fact, they are not, and vice versa. Such association constitutes false designation of origin, in violation of 15 U.S.C. § 1125(a).

188.    Unless restrained by this Court, Defendants will continue to use Plaintiff's XAI Trademark, or marks confusingly similar thereto, which causes Plaintiff irreparable harm.

189.    Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants, their respective officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

190.    Plaintiff is entitled to recover actual damages that it has sustained and/or is likely to sustain as a result of Defendants' wrongful act.

191.    Plaintiff is entitled to recover any gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

192.    Because Defendants' wrongful acts were willful, Plaintiff is entitled to an award of exemplary damages at common law as well as trebled monetary relief, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (Unfair Business Practices - Cal. Bus. & Prof. Code § 17200 *et seq.*)

193.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

194.    Defendants' actions as alleged herein constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code § 17200 *et seq*.

195.    Defendants' conduct constitutes a violation of the Lanham Act and the statutory and common trademark law of California and other states.

196.    Defendants' conduct is causing confusion and deception among consumers and the general public, it offends public policy as set forth in the Lanham Act and the statutory and common trademark law of California and other states, it is substantially injurious to consumers, and it is without justification.

197.    Defendants' conduct is likely to—and has—deceived reasonable consumers, or has the capacity to do so, and Defendants' unlawful use of the XAI Trademark in purely commercial advertising is material.

198.    Defendants' unlawful actions described herein have resulted in Defendants making substantial sales and profits through unauthorized use of Plaintiff's XAI Trademark.

199.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has been injured in fact and has suffered financial harm and injury to its reputation and goodwill. Such harm will continue unless Defendants' acts are enjoined by the Court. Plaintiff has no adequate remedy at law, and therefore is entitled to an injunction prohibiting Defendants from continuing the practices described above.

200.    Plaintiff seeks restitution in this matter, including an order granting an award of Defendants' profits stemming from their infringing activity.

## FOURTH CAUSE OF ACTION

### (Common-Law Trademark Infringement and Unfair Competition)

201.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

202.    Defendants' actions constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless enjoined by this Court, a likelihood of confusion and actual confusion to the irreparable injury of Plaintiff. Plaintiff has no adequate remedy at law for this injury.

203.    On information and belief, Defendants acted with full knowledge of Plaintiff's use of, registered and common law rights to, Plaintiff's XAI Trademark and without regard to the likelihood of confusion of the public created by Defendants' activities.

204.    Defendants' actions demonstrate an intentional, willful, and malicious disregard for the goodwill associated with Plaintiff's XAI Trademark to Plaintiff's great and irreparable injury.

205.    As a result of Defendants' actions, Plaintiff has been damaged in an amount not yet determined or ascertainable. At minimum, however, Plaintiff is entitled to injunctive relief, to an accounting of Defendants' profits, damages, and costs. Further, in light of Defendants' deliberate

1    and malicious use of confusingly similar imitations of Plaintiff's preexisting rights in the XAI

2    Trademark, and the need to deter Defendants' from engaging in similar conduct in the future,

3    Plaintiff additionally is entitled to punitive damages.

4                                **FIFTH CAUSE OF ACTION**

5    **(Abandonment - Cancellation of Trademark Reg. No. 5,171,511 Under 15 U.S.C. § 1064)**

6                                **(Against Defendant X.AI Corp.)**

7        206.    Plaintiff repeats and incorporates by reference the allegations in the preceding

8    paragraphs.

9        207.    Per 15 U.S.C. § 1127, a "mark shall be deemed to be 'abandoned' … [w]hen

10   its use has been discontinued with intent not to resume such use."

11       208.    "'Use' of a mark means the bona fide use of such mark made in the ordinary course

12   of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.

13       209.    A prior owner of the X.AI mark covered by U.S. Trademark Registration No.

14   5,171,511 abandoned the X.AI mark and all rights associated with that mark by ceasing to offer

15   goods or services under that X.AI mark in commerce and expressing an intent not to resume use

16   more than a year before Defendant X.AI Corp. acquired the registration.

17       210.    Defendants have threatened that they will assert Defendant X.AI Corp.'s U.S.

18   Trademark Registration No. 5,171,511 against Plaintiff to seek cancellation of Plaintiff's U.S.

19   Trademark Registration No. 7,788,241 for its XAI Trademark and will pursue whatever action they

20   deem appropriate, thereby threatening legal action and the potential disruption of Plaintiff's United

21   States business operations and causing great and irreparable harm to Plaintiff.

22       211.    The prior discontinuance of use with intent not to resume use of the X.AI mark

23   covered by U.S. Trademark Registration No. 5,171,511 for the identified goods is grounds for

24   cancellation at any time under 15 U.S.C. § 1064.

25       212.    The U.S. Trademark Registration No. 5,171,511 is void due to abandonment.

26       213.    The Court should therefore issue an order certified to the Director of the USPTO to

27   cancel the registration of Defendant X.AI Corp.'s Trademark Registration No. 5,171,511. *See* 15

28   U.S.C. § 1052(d), 1064.

1

**SIXTH CAUSE OF ACTION**

2

**(Assignment in Gross - Cancellation of Trademark Reg. No. 5,171,511 Under 15 U.S.C. § 1064)**

3

**(Against Defendant X.AI Corp.)**

4       214.    Plaintiff repeats and incorporates by reference the allegations in the preceding

5    paragraphs.

6       215.    To the extent U.S. Trademark Registration No. 5,171,511 has not been abandoned,

7    neither Defendant X.AI Corp. nor Defendant X.AI LLC have valid ownership rights in U.S.

8    Trademark Registration No. 5,171,511 because it was invalidly assigned as an assignment in gross.

9       216.    Upon information and belief, the prior owners of the X.AI mark claimed in U.S.

10   Trademark Registration No. 5,171,511 ceased offering goods or services under that X.AI mark more

11   than a year before Defendant X.AI Corp. acquired the registration such that there was no related

12   business to transfer to Defendant X.AI Corp.

13      217.    The mere fact that an assignment agreement may recite that goodwill is transferred is

14   not determinative as to the validity of the assignment.

15      218.    However, to the extent the underlying business was transferred, or the prior owner is

16   deemed not to have abandoned its rights, upon information and belief, Defendants failed to maintain

17   continuity of use of the X.AI mark in commerce in connection with the goods or services claimed in

18   U.S. Trademark Registration No. 5,171,511.

19      219.    In a USPTO filing concerning U.S. Trademark Registration No. 5,171,511, Defendant

20   X.AI Corp. confirmed it was not yet using the X.AI mark in commerce as of September 28, 2023, in

21   connection with the goods or services claimed in the registration.

22      220.    It does not appear that Defendants have used the X.AI mark claimed in U.S.

23   Trademark Registration No. 5,171,511 in connection with the goods or services claimed in the

24   registration, namely calendaring.

25      221.    Defendants have no valid rights to ownership of the X.AI mark through U.S.

26   Trademark Registration No. 5,171,511 due to the invalid assignment in gross. *See* 15 U.S.C.§ 1064.

27

28

44

**SEVENTH CAUSE OF ACTION**

**(Request for Order Invalidating and Refusing Trademark Applications Under 15 U.S.C. § 1119)**

**(Against Defendant X.AI Corp.)**

222.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

223.    This Court has authority under 15 U.S.C. § 1119 to determine Defendant X.AI Corp.'s right to registration of the Infringing xAI Marks covered by Defendant's Applications, which are currently pending at the USPTO.

224.    The Infringing xAI Marks covered by Defendant's Applications so resemble Plaintiff's XAI Trademark as to be likely to cause confusion, or to cause mistake, or to deceive consumers or potential consumers as to the source or origin of the parties' goods and services. Defendant's Applications should therefore be refused registration under 15 U.S.C. § 1052(d).

225.    Pursuant to 15 U.S.C. § 1119, Plaintiff petitions the Court to issue an order certified to the Director of the USPTO to invalidate and refuse registration of Defendant's Applications under 15 U.S.C. § 1052(d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in its favor for each claim set forth above and award Plaintiff relief, including, but not limited to, the following:

1.    An order permanently enjoining Defendants and their owners, agents, employees, or persons in active concert or participation with them, from using in commerce Plaintiff's XAI Trademark, or any similar word, design, symbol, device, or combination, in a manner that is likely to cause confusion or mistake, or to deceive, including but not limited to in connection with video gaming, blockchain, and related goods and services;

2.    An order directing the Director of the USPTO to cancel Defendants' U.S. Trademark Registration No. 5,171,511;

3.    An order directing the Director of the USPTO to invalidate all of Defendants X.AI Corp.'s pending U.S. applications to register marks comprising or containing X.AI or XAI, including U.S. Trademark Application Serial Nos. 98/162,092, 98/162,099, 98/204,432, 98/924,975, and

1   98/329,246; and

2        4.     An order awarding:

3                    a.   Disgorgement of all gains, profits, and advantages derived by Defendants

4                         from their unlawful activities described above;

5                    b.   Actual/compensatory damages in an amount to be determined at trial,

6                         including but not limited to corrective advertising, loss to goodwill, a

7                         reasonable royalty, and lost profits;

8                    c.   Treble monetary relief under federal law;

9                    d.   Punitive/exemplary damages under state law;

10                   e.   Statutory damages;

11                   f.   Plaintiff's costs and expenses;

12                   g.   Plaintiff's reasonable attorneys' fees;

13                   h.   Prejudgment and post-judgment interest at the maximum legal rate; and

14                   i.   Such other relief as the Court may deem just and proper.

15                              **<u>DEMAND FOR JURY TRIAL</u>**

16       Plaintiff demands a trial by jury on all issues and claims raised in its Complaint that are

17   triable by jury.

18
     DATED: August 21, 2025              Respectfully submitted,
19
                                         KILPATRICK TOWNSEND & STOCKTON LLP
20

21
                                         By: */s/ Kollin J. Zimmermann*
22                                       KOLLIN J. ZIMMERMANN

23                                       KILPATRICK TOWNSEND & STOCKTON LLP
                                         Kollin J. Zimmermann (CA Bar No. 273092)
24                                       KZimmermann@ktslaw.com
                                         Dennis L. Wilson (Bar No. 155407)
25

26

27

28

COMPLAINT
CASE NO.:  3:25-cv-07101

DWilson@ktslaw.com
Josiah L. Alter (CA. Bar No. 339670)
JAlter@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:        (310) 248-3830
Facsimile:        (310) 860-0363

Kristin M. Adams (*Pro Hac Vice Pending*)
kmadams@ktslaw.com
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone:        (404) 815-6500
Facsimile:        (404) 815-6555

COMPLAINT
CASE NO.:  3:25-cv-07101