UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EX POPULUS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>X.AI CORP., et al.,<br><br>　　　　　Defendants. | Case No.  25-cv-07101-RFL   (TSH)<br><br>**PUBLIC VERSION OF ECF NO. 78**<br><br>Re: Dkt. No. 72 |

The parties have filed a joint discovery letter brief at ECF No. 72, in which Plaintiff moves to compel on three different subjects.  The Court addresses each in turn.

**A.    Interrogatories 17, 18 and 22 to Defendant X.AI Corp.**

Rog 17 asked X.AI Corp. how the X.AI mark was selected and for related information. Rog 18 asked X.AI Corp. to describe all steps Defendants have taken to launch an AI game studio and for related information.  And rog 22 asked X.AI Corp. to state the monthly sales and revenue associated with Defendants' use of the X.AI Mark.  This looks like relevant and discoverable information, and Defendants do not argue otherwise.

Defendants' gripe is that Plaintiff expects X.AI Corp. to answer these rogs on behalf of both Defendants because Defendant X.AI LLC is a wholly owned subsidiary of X.AI Corp., and therefore all information known to X.AI LLC is available to X.AI Corp.  Defendants complain that Plaintiff's first 16 rogs were the same for each Defendant, but that starting with rog 17 Plaintiff propounded different rogs to each Defendant, in what Defendants say is a bid to exceed the 25 rog presumptive limit in Rule 33.  In other words, Defendants say that starting with rog 17, every rog to X.AI Corp. is really two rogs because Plaintiff expects X.AI Corp. to answer on

United States District Court<br>Northern District of California

United States District Court
Northern District of California

behalf of both Defendants.

Defendants' complaint has no merit. They have confused Rule 33 with Rule 30. Rule 30's presumptive limit on depositions is *per side*. Fed. R. Civ. Proc. 30(a)(2)(A)(i) (leave of court needed if "deposition would result in more than 10 depositions being taken . . . by the plaintiffs, or by the defendants, or by the third-party defendants"). But Rule 33 limits rogs *per party*. Fed. R. Civ. Proc. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories"). Yes, in a multi-defendant case where the defendants are all corporate affiliates that basically all have the same knowledge, the plain language of the rule means the plaintiff can ask each defendant a different set of 25 rogs, which could result in a large number of total rogs. That is the basic consequence of a per-party rather than per-side limit, and Rule 33 has no exception where one defendant knows everything known to another defendant.

Here, Plaintiff is fully entitled to ask each Defendant different rogs, as long as each Defendant is not served with more than 25 rogs. And each Defendant must answer with all "the information available to the party," Fed. R. Civ. Proc. 33(b)(1)(B), which includes the information known to its wholly owned subsidiary. Accordingly, the Court **GRANTS** Plaintiff's motion to compel and **ORDERS** X.AI Corp. to answer these rogs with the information known to X.AI LLC.

In addition, the Court **ORDERS** X.AI Corp. to answer these rogs with the information available to X.AI Corp., and the Court sees that X.AI Corp. has a significant misunderstanding about what that is. The information available to X.AI Corp. is all of the information known to its officers and employees and those acting on its behalf. Here, the same person verified X.AI Corp.'s and X.AI LLC's rog responses, and it is not true that "the information available" to him (Fed. R. Civ. Proc. 33(b)(1)(B)) varies depending on what rog response he is verifying. Further, in response to rog 10, Defendants state that the person who verified X.AI Corp.'s and X.AI LLC's rog responses is a Director, Associate General Counsel of X Corp.

Plaintiff appears to be correct that Defendants are playing a corporate shell game, insisting that the different X.AI entities have different knowledge when the actual people in control of both entities are the same. Rog 12 asked Defendants to "Describe in Detail the relationship between Defendant X.AI Corp., Defendant X.AI LLC, and any other related entity, including as pertains to

any Use of, enforcement of, or rights in the Claimed X.AI Mark." Their answer describes the X.AI entities as functionally being the same company: "Since its formation, X.AI Corp. and, following the assignment of all its assets to X.AI LLC as described below, X.AI LLC (together with X.AI Corp., 'X.AI') have operated under the name of 'X.AI' or 'xAI' and have employed a robust team across multiple disciplines to build AI models and offer API access." Defendants continued: "Subject to intercompany agreements, since July 2023, Defendants have provided X Corp. with services related to its use of Defendants AI models, and a license to use and display same. Defendants however own and retain all rights, title and interest in the X.AI models and Grok chatbot." And look at this disclaimer: "X Corp. remains an independent sister company of Defendants' with its own operations, trademark portfolio, goods and services." The insistence that X Corp. is an independent sister company of Defendants' (note the plural) further emphasizes what is made clear by the rest of this rog response: The two X.AI entities are not independent of each other. And the fact that an X Corp. officer is the person verifying the X.AI entities' rogs responses undermines the assertion that they are actually independent of X. Corp.

Thus, as a formal legal matter, all of the information available to X.AI LLC is also available to X.AI Corp. because the former is a wholly owned subsidiary of the latter. And as a factual matter, there is no reason to believe the information available to each X.AI entity is any different because they are functionally one company.

**B.    SpaceX and X Corp.'s Use of the Mark, and Elon Musk's X Post**

Plaintiff moves to compel responses to its RFPs 105, 106, 108 and 109; rogs 17, 21 and 22 to X.AI LLC; and rogs 19 and 20 to X.AI Corp. The RFPs seek documents concerning how X Corp. has used or plans to use the mark (105), how SpaceX has used or plans to use the mark (106), X Corp.'s revenue associated with the mark (108), and SpaceX's revenue associated with the mark (109). The rogs to X.AI LLC ask about the creation of a post by Musk on X stating that X.AI is going to start an AI game studio to make games great again (17), the revenue X Corp. has generated in connection with the mark (21), and the revenue SpaceX has generated in connection with the mark (22). The rogs to X.AI Corp. ask about the ways in which X Corp. has used the mark (19) and how SpaceX has used the mark (20).

3

United States District Court
Northern District of California

Defendants' relevance objections do not make sense. Defendants' trademark licenses to affiliated entities are relevant to Defendants' use of and rights in the mark. How X Corp. and SpaceX are using the mark and the revenue they have generated from it are relevant to show what conduct has been licensed, the value of the licenses, and the value and strength of the mark. These discovery requests are mostly just variants on the question "what do your licensees do with the mark?" and that is relevant trademark discovery. And the post on X is about the future of X.AI, so how it was generated is relevant too.

Defendants mistakenly argue that it is impossible to know anything about what someone else did. For example, in response to rog 17, X.AI LLC states that it did not make the post on X, as if that logically means it cannot know anything about the creation of the post. And Defendants argue that they do not own or control X Corp. or SpaceX, and so asking them about X Corp. or SpaceX violates corporate separateness. To emphasize the hypocrisy of Defendants' objections, they have an X Corp. officer verify those rog responses.

But the entire premise of Defendants' argument – that you cannot know anything about what someone else did unless you control them or are them – is wrong. If you see a car run over a pedestrian, you know what happened to the pedestrian. Because you saw it happen. You don't need to own the car or control the pedestrian to know what happened.

Affiliated companies often know a great deal about what their affiliates do, and trademark owners typically know what their licensees are up to with the mark. The idea that Defendants have no information or documents about what X Corp. and SpaceX are doing with their mark is surely a jest. Defendants' documents include the documents in their possession, custody or control, even if the documents are "about" a different entity. And their knowledge includes everything known to their officers and employees and those acting on their behalf, such as the person verifying their rog responses, including knowledge "about" other companies. The Court **GRANTS** Plaintiff's motion to compel as to these discovery requests.

To be clear, the Court is not ordering the X.AI entities to respond with the knowledge available to and documents possessed by X Corp. or SpaceX. The Court has not found that Defendants have the legal right to obtain documents in SpaceX's or X Corp.'s possession or that

4

United States District Court
Northern District of California

they exercise control over those entities.  Rather, the Court orders Defendants to respond to these discovery requests with the information available to them and with the documents in their possession, custody or control.  For the reasons explained, the Court declines to believe that is a null set.

Defendants are taking the position that if they do not control SpaceX or X. Corp., then it somehow logically follows they cannot know anything about what those companies do, and cannot have in their possession any documents about those companies, or that it is somehow improper to ask company A what it knows about company B.  The Court rejects those arguments and **ORDERS** Defendants to respond to these discovery requests to their best of their ability, which includes all knowledge available to the Defendants and all documents in Defendants' possession, custody or control.

It is probably true that X Corp. and SpaceX have better and more complete documents and information on these subjects than Defendants do.  But information need only be relevant to be discoverable; it need not be both relevant and perfect.  Thus, it is not a proper objection that somebody else has more relevant information than you do.  What relevant information you know, and what relevant documents you have, is discoverable.

## C.    Trademark Clearance

Finally, Plaintiff moves to compel on rog 18 to X.AI LLC, which asked:  "Describe in Detail all actions taken by You to determine whether the Claimed X.AI Mark was available to be used in commerce, including by Identifying the Dates of all trademark clearance searches conducted, the Persons involved in such trademark clearance searches, the Dates of any meetings regarding any trademark clearance searches, and the Bates number of any Documents Concerning any trademark clearance searches."

X.AI LLC responded:  "On or around August 2023, Defendant engaged Polsinelli Law Firm ('Polsinelli') in connection with trademark filing and legal advice relating to the Claimed X.AI Mark.  After a reasonable investigation, and subject to Defendant's privilege objections, Defendant is not presently aware of non-privileged information sufficient to identify the date and

United States District Court
Northern District of California

details of each trademark clearance search, any meetings regarding such searches, or the persons involved."

That is a pretty bare bones answer, and it is hard to believe that all other responsive information is privileged. X.AI LLC seems skeptical of its answer too, as it states it will supplement its response to include the names of the specific lawyers at X.AI LLC's outside law firm who provided advice.

The Court thinks rog 18 should be approached in stages. First, X.AI LLC must amend its answer as it said it will. Next, X.AI LLC must serve a privilege log. Plaintiff makes a good point that there needs to be a privilege log that is specific to this rog because if these privilege entries are dumped in a privilege log that covers the entirety of Defendants' productions, it will be hard or impossible for Plaintiff to find them.

Accordingly, the Court **ORDERS** X.AI LLC to serve its amended response to rog 18 within seven days. The Court **ORDERS** X.AI LLC to serve a privilege log that is specific to this rog within 30 days. Thereafter, if Plaintiff wishes to challenge any of the claims of privilege, it should meet and confer with Defendant, and if the parties cannot agree, they should file a joint discovery letter brief.

**IT IS SO ORDERED.**

Dated: June 11, 2026

THOMAS S. HIXSON
United States Magistrate Judge