KILPATRICK TOWNSEND & STOCKTON LLP
Kollin J. Zimmermann (CA Bar No. 273092)
KZimmermann@ktslaw.com
Dennis L. Wilson (CA Bar No. 155407)
DWilson@ktslaw.com
Josiah L. Alter (CA. Bar No. 339670)
JAlter@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830

Kristin M. Adams (admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500

*Attorneys for Plaintiff Ex Populus, Inc.*

DEBEVOISE & PLIMPTON LLP
David H. Bernstein (CA Bar No. 336551)
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5700
Email: dhbernstein@debevoise.com

*Attorneys* for Defendant X Corp.*
*Additional Counsel on Signature Page

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

EX POPULUS, INC., A DELAWARE CORPORATION,

*Plaintiff and Counterclaim-Defendant*,

v.

SPACEX.AI CORP., A NEVADA CORPORATION, AND SPACEX.AI LLC, A NEVADA COMPANY,

*Defendants and Counterclaim-Plaintiffs*,

and

SPACE EXPLORATION TECHNOLOGIES CORP., A TEXAS CORPORATION, AND X CORP., A NEVADA CORPORATION

*Defendants*.

Civil Action No. 3:25-cv-07101-RFL
*Judge: Hon. Rita F. Lin*

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AS TO PLAINTIFF EX POPULUS, INC. AND DEFENDANT X CORP.**

Second Am. Compl. Filed: July 16, 2026

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Ex Populus, Inc. ("Plaintiff") and Defendant X Corp. ("Defendant," and collectively with Plaintiff, the "Parties") respectfully submit this Proposed Stipulated Order Regarding Discovery of Electronically Stored Information (the "Order").

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This Order does not displace Federal Rules of Civil Procedure 26 or 34 or diminish a party's obligations to search for, collect, and produce discoverable information that is kept in the ordinary course of business as ESI.

**2. COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3. LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a) Each Party will only preserve ESI created or received between October 1, 2022 and the issuance of a final judgment in this litigation;

b) The Parties agree that if a party designates a data source as not reasonably accessible, it shall be assessed using the factors established in Fed. R. Civ. P. 26 and case law interpreting the same; and

c) At this time, the Parties agree that they are not under a duty to preserve the following: backup media created before July 16, 2026; data on personal devices; digital voicemail. For clarity, this order does not limit either Party's obligation to search for and produce responsive documents that exist on any of these devices/platforms to the extent they are within the Party's possession, custody, or control.

d) Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case.

**5. SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will conduct a reasonable search to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6. PRODUCTION FORMATS AND PROTOCOLS FOR ESI**

ESI. Electronically stored information ("ESI") and paper documents that are produced as scanned images shall be produced as black and white Group IV single-page TIFF (300 DPI, 1 bit) with the following exceptions: (1) documents that are in color such as those containing images of marks and/or advertising should be produced as single page color jpegs (.JPG); and (2) certain documents identified in b) below may be produced in native format. If after reviewing any black and white document, a receiving party believes that color is critical to a document, the Parties agree to engage in discussion regarding production of documents in color, which production will not be unreasonably withheld. The Parties shall provide image load files in Concordance (.OPT) format so as to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata should be provided in a Concordance .DAT

format, or other standard, compatible file format and extension as the receiving party specifies, and the searchable text (OCR) for non-native or non-searchable native files will be provided as multi-page text (.txt) files or other standard, compatible file format as specified by the receiving party.

Native Format. Parties may produce agreed-upon ESI in native format, such as spreadsheets (e.g., Excel, Google Sheets, Open Office, CSV, TSV, etc.) and other files that cannot be converted to TIFF (such as audio, video, and XML files). Native files should contain the Bates number and confidentiality designation of the file in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation. Wherever feasible, the producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production. Additionally, if after reviewing production of other ESI in a non-native format, a receiving party believes that it is necessary to review a certain document or documents in native format, the Parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

Hard Copy Documents. The Parties agree to use reasonable efforts to ensure that hard copy (paper) documents shall be scanned, logically unitized, and produced electronically as specified in the form of production above. This provision does not obligate any party to produce documents in a manner other than in which those documents were kept in the ordinary course of business such that hard copy documents that are not scanned into electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., hard copies). Copies of such hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party.

Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a document and any attachments to that document are produced in the same production set and are identifiable as parent and child.

Attachments. As a standard practice, responsive documents should be provided with full

family members (e.g., parent emails and attachments), even if some attachments may be non-responsive, with the exception that parent emails or attachments that may contain information that is otherwise protected may be withheld. This provision does not prohibit the Parties from agreeing to withhold additional documents from production, in which case a non-responsive slipsheet should be provided in place of the document.

De-duplication. The Parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (i.e., all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced.

Email Thread Analysis. Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

Messaging Platforms. The Parties agree to use reasonable efforts to ensure that relevant data generated by or maintained in messaging platforms (e.g., Slack, WhatsApp, Microsoft Teams, etc.) are produced in RSMF format. If the producing party objects to such format, the Parties shall undertake reasonable efforts, and if necessary, will meet and confer to resolve any disagreements prior to the time for production.

Hyperlinks. The Parties agree that if it appears that there are any relevant emails or messages which contain hyperlinks to attached documents stored within an enterprise communications platform (e.g., Microsoft Teams, Google Gsuite, etc.), a Receiving Party may make a reasonable request to the Producing Party for production of any identified linked data or files that are maintained and easily identifiable. The Parties agree to confer in good faith as to the scope and reasonable steps necessary to meet their obligations in accordance with this paragraph and to respond to a Receiving Party's request.

Redactions.

Email Redactions. In the event that the producing party finds that redactions are needed,

the producing party shall redact only privileged information within the body of the email, in addition to the subject line, if it reveals privileged information. Other identifying information, such as the To/From/CC/BCC, for example, shall not be redacted unless independently privileged. The Parties may redact certain metadata if it reveals privileged information.

Native Redactions. In the event that the producing party finds the redaction of certain documents in image format to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

k) Databases. Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in a database software. If the receiving party objects to such form, the Parties shall undertake reasonable efforts, and if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

l) Non-English ESI. Textual information associated with ESI will be produced at least in the language in which it is kept in the usual course of business. This protocol does not affect the translation of documents that may be produced in discovery.

m) Metadata Fields. Preferred metadata fields are identified in the attached Exhibit A, titled "Specifications for the Production of ESI."

n) No Obligation to Convert Third Party Productions. The Parties agree that any document production received from a third party shall be produced in the format in which it was received.

o) Rolling Productions. The Parties agree to produce documents on a rolling basis.

p) Method of Production. The Parties agree that documents produced will be made available via secure file transfer (e.g., SecureShare) if requested by the receiving party. If a production is too large for secure file transfer, documents will be produced on a secure CD/DVD, thumb drive, hard drive, or similar media.

q) Data Subject to Privacy Laws. The Parties agree to make reasonable efforts to protect any data or information subject to the General Data Protection Regulation (GDPR) or other similar laws and regulations regarding data privacy and cross border data transfer, and agree that such data or information may be redacted in accordance with the GDPR or other laws or regulations, to the extent reasonably practicable. Nothing herein is meant to conflict with the requirements of the GDPR or other similar laws and regulations or to impose any obligations that would conflict with protections afforded under the GDPR or other similar laws and regulations.

## 7. DOCUMENTS PROTECTED FROM DISCOVERY

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) The parties have agreed upon a "quick peek" process pursuant to Fed. R. Civ. P. 26(b)(5) and reserve rights to assert privilege as follows:

1) Privilege Logs. Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege. For hard copy documents, each party shall create privilege logs using the standard privilege log described below. For electronic documents, each party may opt at its discretion to create privilege logs using one of the following methods.

A) Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

i) LOG NO. (coded field)

ii) BEG BATES (for redacted documents)

iii) END BATES (for redacted documents)

iv) SUBJECT

v) FILE NAME

vi) CUSTODIAN

vii) AUTHOR

viii) SENT FROM

ix) SENT TO

x) SENT CC

xi) SENT BCC

xii) SENT DATE AND TIME (if time is not needed, may substitute DATE FAMILY)

xiii) FILE CREATED DATE AND TIME

xiv) FILE LAST MODIFIED DATE AND TIME

xv) PRIVILEGE TYPE (coded field)

xvi) PRIVILEGE REASON (coded field)

xvii) PRIVILEGE DESCRIPTION (a party may elect to include a coded privilege description field)

xviii) ATTORNEYS (a party may elect to code other attorneys and legal staff involved in the communication that are not indicated in metadata)

B) With respect to the SUBJECT or FILENAME fields, the Producing Party may substitute a description of the communication where the content of these fields may reveal privileged information but must indicate that the fields have been revised. The automated log should also include a field for PRIVILEGE REASON, which is a coded (not automated) field. The Parties may agree that the automated log should also include a field for ATTORNEYS that lists other attorneys (and legal staff) involved in the communication not indicated in metadata, which may be an automated or coded (not automated) field. Should the Receiving Party in good faith have reason to believe a particular entry

on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced by 10 business days from the request, or within such other reasonable time as the Parties may agree or the Court may order.

C) Standard Log. A standard privilege log will include these standard fields: author/sender/from; recipients/to; cc; bcc; custodian; date; privilege type; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other attorneys and legal staff identified on the face of the document not already captured in the top email of the email string. Other attorneys and legal staff need only be identified for the email strings that are withheld as entirely privileged.

c) Privileged communications that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**8. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties, by agreement, or by the Court for good cause shown. Nothing in this Order is intended to, nor does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. The Parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, nor does, restrict the ability of any party to request additional information or seek additional relief from the Court. The Parties each retain the right to seek exceptions, amendments, or modifications to this Order from the Court.

**9. SEARCH METHODOLOGY**

Prior to either Party's initial production, the Producing Party will provide the Receiving Party with a description of its proposed search methodology, including its proposed search terms, date ranges, custodians, and document repositories, and the Parties will promptly confer in good faith to come to an agreement on the proper search methodology or submit the issue to the Court if an agreement cannot be reached. For clarity, this is for initial collection/production purposes only, and it does not preclude either Party from requesting further collection based on documents produced or information gathered through discovery.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: September 17, 2026

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *Kollin J. Zimmermann*

KOLLIN J. ZIMMERMANN
DENNIS L. WILSON
KRISTIN M. ADAMS (admitted *Pro Hac Vice*)
JOSIAH L. ALTER

*Attorneys for Plaintiff*

DATED: September 17, 2026

By: */s/ Megan K. Bannigan*

DAVID H. BERNSTEIN
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5700
Fax: (415) 644-5628
dhbernstein@debevoise.com

MEGAN K. BANNIGAN*
JARED I. KAGAN*
NICOLE M. FLORES*
DANIEL N. COHEN*
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000

Fax: (212) 909-6836
mkbannigan@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
dncohen@debevoise.com

*Admitted Pro Hac Vice

*Attorneys for Defendant X Corp.*

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

The above **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** is approved as the ESI Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED

Dated: September 18, 2026

Thomas S. Hixson
United States Magistrate Judge

**SIGNATURE ATTESTATION**

Pursuant to L.R. 5-1(i)(3), the undersigned attests that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's contents and have authorized this filing.

DATED: September 17, 2026

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *Kollin J. Zimmermann*
KOLLIN J. ZIMMERMANN
DENNIS L. WILSON
KRISTIN M. ADAMS (admitted *Pro Hac Vice*)
JOSIAH L. ALTER

Attorneys for Plaintiff

## EXHIBIT A

## Specifications for Production of ESI

**Production Folders**

- Production folders should be delivered as shown below and restricted to 1,000 files per subfolder.
  - DATA
  - IMAGES
  - NATIVES
  - TEXT

**Required Metadata and Database Fields**

- Metadata load file should be encoded in Unicode (UTF-8) and provided in Concordance .DAT format.

| Value | Charac | ASCII |
|---|---|---|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value (Do not follow with space) | ; | 59 |
| Nested Value | \ | 92 |

- The first row of each metadata load file should contain the field names listed in the attached table of preferred metadata fields OR as specified by party agreement or agency specifications. All requested fields should be present in the metadata load file regardless of whether data exists. Field order should remain consistent in subsequent productions.
- Date & Time format should be MM/DD/YYYY HH:MM (06/30/2009 13:30), unless otherwise specified to be provided as separate fields. If date and time fields are to be provided separately, date format should be MM/DD/YYYY and time format should be HH:MM.
- All attachments should sequentially follow the parent document/email.

**Images**

- Images should be provided for all documents that can be imaged.
- Format should be black-and-white Group IV single-page TIFFs (300 DPI, 1 bit).
- Single-page images should be provided with an Opticon Image load file (.OPT).
- If color images are required, they should be provided in single-page .JPG format.
- When a file is provided natively, an image (TIFF) placeholder (or slipsheet) should be supplied in the appropriate IMAGES folder and should contain the BEGDOC number, Confidentiality Designation and “File Provided Natively.”
- Image file names should match the page identifier for that specific image and end with the appropriate extension.

- File names cannot have embedded spaces, commas, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (,& \ / # + % ! : * ? " < > | ~ @ ^).

**Native Documents**

- Spreadsheets (e.g., excel, google sheets, OpenOffice, CSV, TSV, etc.) and other files that cannot be converted to TIFF, such as media files (AVI, MOV, MP4, MP3), should be provided natively.
- Native files should be named for the BEGDOC number for that specific file followed by an underscore and then the Confidentiality Designation and appropriate file extension. (e.g., ABC00000001_Confidential.xls).
- Native files should be accompanied by a TIFF placeholder as described above.

**Text**

- Text should be provided for each file in separate text file (.txt) with document level text and a relative link to the file in the DAT. DO NOT place extracted text or OCR in the DAT file.
- Text files should be named for the BEGDOC number for that specific file.
- All records should have a text file even if the file has no text.
- All text should be processed and delivered in Unicode (UTF-8). If any other text encoding is present in the deliverable, please let the receiving party know at the time of delivery.
- Text files for redacted documents should be the OCR text of the document as redacted.

**Metadata Fields**

| CATEGORY | FIELD NAME | FIELD DESCRIPTION |
|---|---|---|
| *All* | **BEGDOC** | Starting number of a document; aka BegDoc, BeginDoc |
| | **ENDDOC** | Ending number of a document; aka EndDoc, EndingDoc |
| | **BEGATTACH** | Starting number for parent document within a group; aka BegAttach |
| | **ENDATTACH** | Ending number for child document within the group; aka EndAttach |
| | **CUSTODIAN** | Custodian(s) / source(s); Last, First |
| | **SOURCE/ORIGINAL FILEPATH** | File path indicating the original location of the document |
| | **ALL SOURCES/FILEPATHS** | Path information for original and de-duplicated file(s) |
| | **CONFIDENTIALITY** | Confidentiality designation of a document |
| | **FILEEXTENSION** | Actual file extension of the eDoc or email; aka Extension |
| | **MD5HASH** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| | **PARENTID** (if applicable and/or equivalent) | Document ID of the parent document; this field will only be available on child items |
| | **CHILDID** (if applicable, and/or equivalent) | Attachment document IDs of all child items in family group delimited by semicolon; this field will only be present on parent items; aka AttachmentDocID |
| | **NATIVELINK** | Path to native files if natives are delivered |
| | **TEXTLINK** | Path to text files |
| | | |
| ***Email/Instant Message*** | **FROM** | Sender of the email; aka SentFrom, SenderNames |
| | **TO** | Recipient(s) of the email; aka SentTo, RecipientNames |
| | **CC** | Recipient(s) of the email in the "CC" field; aka CCRecipientNames |
| | **BCC** | Recipient(s) of the email in the "BCC" field; aka BCCRecipientNames |
| | **SUBJECT EMAIL** | Subject of the message |
| | **SENTDATE (DATE & TIME)** | Date and time the email was sent |
| | **DATERECEIVED (DATE & TIME)** | Date and time the email message was received |
| | **ATTACHMENTCOUNT** | Number of attachments an email has |
| | **MESSAGE TYPE** | Outlook bound property indicating type of entry in store; aka MsgClass. Possible values include Appointment, Contact, Distribution List, Delivery Report, Message, or Task |
| | **MESSAGEID** | Message number created by an email application and extracted from the email's metadata; aka int_msgID |

| | | |
|---|---|---|
| ***E-Doc*** | **FILENAME** | Name of the original file; aka Filename, Original Filename, Name |
| | **AUTHOR** | Author of the eDoc; Last, First |
| | **DATE CREATED (DATE & TIME)** | Date the eDoc was created; aka CreationDate, HeaderCreatedDateTime |
| | **DATE LAST MODIFIED (DATE & TIME)** | Date & Time the eDoc was last modified; aka ModifiedDate, ModificationDate, HeaderModifiedDateTime |