**KILPATRICK TOWNSEND & STOCKTON LLP**
Kollin J. Zimmermann (CA Bar No. 273092)
KZimmermann@ktslaw.com
Dennis L. Wilson (CA Bar No. 155407)
DWilson@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Kristin M. Adams (admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorneys for Plaintiff and Counterclaim Defendant Ex Populus, Inc.*

**DEBEVOISE & PLIMPTON LLP**
David H. Bernstein (Cal Bar # 336551)
dhbernstein@debevoise.com
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5700
Fax: (415) 644-5628

Megan K. Bannigan (*admitted pro hac vice*)
mkbannigan@debevoise.com
Christopher S. Ford (Cal Bar # 337795)
csford@debevoise.com
Nicole M. Flores (*admitted pro hac vice*)
nmflores@debevoise.com
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000
Fax: (212) 909-6836

*Attorneys for Defendants and Counterclaim-Plaintiffs SpaceX Super Intelligence Corp. and SpaceX Super Intelligence LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

EX POPULUS, INC., a Delaware corporation,

*Plaintiff and Counterclaim-Defendant*,

v.

SPACEX SUPER INTELLIGENCE CORP., a Nevada corporation, and SPACEX SUPER INTELLIGENCE LLC, a Nevada limited liability company,

*Defendants and Counterclaim-Plaintiffs*,

and

SPACE EXPLORATION TECHNOLOGIES CORP., a Texas corporation, and X CORP., a Nevada corporation,

*Defendants.*

Civil Action No. 3:25-cv-07101-RFL
*Judge: Hon. Thomas S. Hixson*

**JOINT LETTER TO THE COURT RE: EX POPULUS'S CUSTODIANS AND DOCUMENT PRODUCTION**

Complaint Filed: August 21, 2025
Second Amended Complaint Filed: July 16, 2026

Dear Judge Hixson:

Plaintiff Ex Populus, Inc. and Defendants SpaceX Super Intelligence LLC and SpaceX Super Intelligence Corp. ("SpaceXSI") submit this joint letter regarding Plaintiff's refusal to add additional custodians and its timing in providing documents responsive to SpaceXSI's Fourth Set of Requests for Production.

The parties attest that they have met and conferred via videoconference in an attempt to resolve their disputes prior to filing this letter.

Respectfully submitted,

*/s/ Kollin J. Zimmermann*
**KILPATRICK TOWNSEND & STOCKTON LLP**
Kollin J. Zimmermann (CA Bar No. 273092)
KZimmermann@ktslaw.com
Dennis L. Wilson (CA Bar No. 155407)
DWilson@ktslaw.com
Josiah L. Alter (CA Bar No. 339670)
JAlter@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Kristin M. Adams (admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorneys for Plaintiff and Counterclaim-Defendant Ex Populus, Inc.*

By: */s/ Megan K. Bannigan*
**DEBEVOISE & PLIMPTON LLP**
DAVID H. BERNSTEIN
dhbernstein@debevoise.com
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5700
Fax: (415) 644-5628

**DEBEVOISE & PLIMPTON LLP**
MEGAN K. BANNIGAN*
mkbannigan@debevoise.com
CHRISTOPHER S. FORD
csford@debevoise.com
NICOLE M. FLORES*
nmflores@debevoise.com
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000
Fax: (212) 909-6836

**admitted pro hac vice*

*Attorneys for Defendants and Counterclaim-Plaintiffs SpaceX Super Intelligence Corp. and SpaceX Super Intelligence LLC*

## I. Plaintiff Should be Compelled to Add Three Document Custodians and Ordered to Produce Documents Responsive to SpaceXSI's Fourth Set of RFPs By December 11.

### A. *Plaintiff Must Add Mark Harris, EJ Ayala, and Ryan Salvesen as Document Custodians.*

Plaintiff has collected and produced documents from just five document custodians in this case. In reviewing those documents, SpaceXSI[1] has identified three Ex Populus employees who were not document custodians but whose roles are central to the claims and defenses at issue: Mark Harris, Ex Populus's Co-Founder and former Creative Director; EJ Ayala, Ex Populus's former Head of Partnerships; and Ryan Salvesen, Ex Populus's former Head of Marketing.

Unsurprisingly, these three employees (the "Missing Custodians") have appeared, repeatedly, on documents central to the issues in this case. On August 21, SpaceXSI requested that Plaintiff collect and produce each custodian's documents. Ex. A. Over two months later, Plaintiff has still not confirmed whether it will be searching the Missing Custodians' documents.

A requesting party may obtain additional custodians upon a showing that the custodians "possess uniquely relevant information that is not available from the sources already designated." *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2025 WL 3443470, at *2 (D. Ariz. Nov. 19, 2025). Plaintiff's documents featuring the Missing Custodians demonstrate each of their decision-making authority and likely possession of unique documents:

- Mr. Harris appears on documents about Plaintiff's launch of the XAI products, its relationships with partners and investors, and the manner in which it advertises and markets its products using its XAI mark. For example, Mr. Harris was leading discussions about Plaintiff's XAI game launches as early as June 4, 2023. *See* Ex. B, EXP00003433. The timing and manner of Plaintiff's launch is key to determining priority in this case, which may be dispositive. Similarly, Plaintiff's marketing and partners are relevant to the *Sleekcraft* likelihood-of-confusion analysis.
- Mr. Ayala appears on emails and documents pertaining to Plaintiff's partnership ecosystem, marketing strategy, $XAI token transactions, and XAI product strategy. *See* Ex. C at 4. In particular, Mr. Ayala's communications hint at the existence of additional external conversations with partners, demonstrating that he is likely to possess unique and relevant documents in his custodial files. *See, e.g.*, Ex. D at 3 [redacted] Each of these categories are relevant to distinguishing the parties' marks, and Mr. Ayala's documents thus could help SpaceXSI disprove likelihood of confusion.
- Mr. Salvesen appears on documents relating to the potential sale of the XAI Trademark, a contemplated XAI rebrand, public-facing communications, advertising of the XAI products on Plaintiff's website, and confusion between Plaintiff and SpaceXSI. *See* Ex. C. In particular, Mr. Salvesen oversaw Ex Populus's contemplated sale of its Xai Trademark, *see* Ex. C at 4; Ex. E at 4–5, and his correspondence regarding a new name for Xai and a potential Xai rebrand are particularly relevant and missing from Ex Populus's production. *See* Ex. E. Documents regarding each of these topics can distinguish the parties' marks and disprove likelihood of confusion as well as provide SpaceXSI with an understanding about Plaintiff's mark ownership and any reasons why it considered changing its name, and Mr. Salvesen's documents appear to be the only ones that could provide SpaceXSI with this information.

Plaintiff's production thus demonstrates that the Missing Custodians communicate with external parties and drive strategy on topics unique to their work and relevant to the case, making their additions necessary and proportional. *See Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO (RMI), 2024 WL 4512055, at *1 (N.D. Cal. Oct. 16, 2024) (granting motion to compel defendant

[1] In July 2026, Defendants rebranded from "xAI" to "SpaceXAI," and in October 2026, Defendants rebranded to "SpaceX Super Intelligence Corp." This letter refers to the entity as "SpaceXSI" throughout.

to add a "key decision-maker regarding the matters at the heart of [the] allegations" and custodian who "oversaw relevant projects" related to the case's key issues); *In re Bank of Am. California Unemployment Benefits Litig.*, No. 21-2992-GPC (MSB), 2024 WL 1774011, at *5–6 (S.D. Cal. Apr. 24, 2024) (requiring searches of additional custodians because their roles and produced documents from others demonstrated that they would have unique documents).

Plaintiff is wrong to minimize the Missing Custodians' significance. Mark Harris appears on 436 documents, Ryan Salvesen appears on 1,284 documents, and EJ Ayala appears on 1,421 documents. *See* Ex. F at 7. Their presence on such a large volume of documents—before their documents were collected and searched—supports their importance. *See Fosbre v. Las Vegas Sands Corp.*, No. 210CV00765APGGWF, 2016 WL 54202, at *6 (D. Nev. Jan. 5, 2016) (granting motion to compel an additional custodian because even if the search would "only result in the production of documents that have already been produced from the files of other custodians . . . it is reasonably possible that [the additional custodian's] files contain relevant documents that have not already been produced through other custodians"). The Missing Custodians' unique knowledge and presence on significant numbers of documents supports SpaceXSI's request.[2]

Plaintiff's CEO's Declaration does not change that reality. Tobias Batton claims that Ex Populus employees include him or his co-founder, Soban Saqib, on "any consequential discussions and related correspondence concerning the XAI brand" to argue that the Missing Custodians' documents are not necessary. *See* Declaration of Tobias Batton ¶ 4. But Messrs. Batton and Saqib cannot possibly know the contents of documents they were not copied on, making the Declaration purely speculative on the relevant question here. And, as the Court has previously noted, a party is not "obligated to accept the say-so of [opposing] counsel about what does or does not exist." July 17, 2026 Hearing Tr. 7:18–20. SpaceXSI should similarly not be obligated to accept Plaintiff's CEO's say-so about the contents of emails he did not receive.

Plaintiff also faces no unreasonable burden because SpaceXSI has agreed that previously reviewed documents need not be reviewed again, a fact Plaintiff ignores. *See United Ass'n Nat'l Pension Fund*, 2025 WL 3443470, at *3 (granting motion to compel additional ESI custodians where "this disclosure would be targeted to a smaller quantity of individuals who may possess fewer files and documents to review than" other ESI custodians). Plaintiff confirmed on October 13 that it was investigating the burden to search and produce the Missing Custodians' documents, but, a month later and after two conferrals, SpaceXSI still does not have an answer from Plaintiff. Ex. E. SpaceXSI has attempted to abide by the Court's direction to resolve disputes without court intervention, but Plaintiff is using that as an excuse to delay, and it is unreasonable for SpaceXSI to wait any longer. SpaceXSI respectfully requests that the Court order Plaintiff to add Messrs. Harris, Ayala, and Salvesen as document custodians by December 11.

B. *Plaintiff Must Produce Documents Responsive to SpaceXSI's Fourth Set of RFPs by December 11.*

Plaintiff must complete its document production in response to SpaceXSI's Fourth Set of Requests for Production. SpaceXSI issued these requests on July 7, 2026. Ex. G. On July 29, Plaintiff requested a three-week extension of its deadline to respond. SpaceXSI granted that extension, and Plaintiff served its Objections & Responses on August 27. Ex. H. Plaintiff, as of the date of submission, has produced just ten documents responsive to Request Numbers 166–169, 176–177, 181–183, and 209–211, which seek documents and communications regarding the 2024 suspension of Plaintiff's @XAI_GAMES X account due to suspected platform manipulation, which are directly relevant to Plaintiff's reputational claims and SpaceXSI's defenses.

[2] Plaintiff's prior contentions explain why it must collect and produce documents from each of the Missing Custodians. Plaintiff previously argued that Elon Musk's appearance on 142 documents necessitated a full ESI search of his custodial documents and email accounts at third parties, and that the production of one email thread from Jared Birchall's third-party account warranted searching that and another email account at another unrelated entity. Each Missing Custodian appears on more than three times as many documents as Mr. Musk appeared on.

Plaintiff admitted that it possesses additional responsive documents that have still not been produced, but is refusing to produce those documents until a response date is negotiated by separate counsel in response to a document subpoena in a separate matter, *X Corp. v. McAfee*, Case No. CGC-25-624713 (Cal. Super. Ct. 2025). Plaintiff's proffered timeline is improper, and this Court should order Plaintiff to complete its production by December 11.

A subpoena for documents with possibly overlapping content does not give Plaintiff a license to delay producing documents responsive to SpaceXSI's requests in this case. There is no rule, local practice, or case that supports Plaintiff's position that it can withhold producing documents because it may have to produce some or all of those documents in response to a subpoena in a separate case. Requests for production to a party and third-party subpoenas to non-parties are independent discovery vehicles and here they have been issued in separate cases, in separate courts, with separate claims. *See Smith v. Aldridge*, No. 319CV05600RBLJRC, 2020 WL 3469243, at *1 (W.D. Wash. June 25, 2020) ("A subpoena . . . is not intended as a substitute for a motion to produce under Rule 34, where . . . the subpoena requires production of documents under the control of a party to the action, as distinguished from documents in the possession and control of an independent witness.") (internal citation omitted). Plaintiff is withholding a production to SpaceXSI contingent on its obligations to parties in a different case. SpaceXSI should not be forced to sit by and await a date in the future when it might receive the documents.

Absent production of these documents, Plaintiff's document production is deficient, and without an order compelling production, Plaintiff will continue to delay and withhold the documents that it has already collected and identified. The court should thus order Plaintiff to produce all documents responsive to SpaceXSI's Fourth Set of RFPs by December 11.

## II. Plaintiff Has Exceeded Its Designated Document Custodian Obligations and Is Continuing to Produce Documents Responsive to SpaceXSI's Fourth Set of RFPs.

### A. *Plaintiff's Custodians' Documents Are More than Sufficiently Comprehensive.*

Having tried for months to manufacture deficiencies in Plaintiff's productions (*e.g.*, Ex. I at 1–2 (responding to Exs. J, K); Ex. F (sans original exhibits) at 4–7 (responding to Ex. A)), Defendants attempt to "me too" Plaintiff's successful requests that Defendants supplement their custodians where clearly identifiable key information was missing from Defendants' productions. But Defendants' production and collection deficiencies have no bearing on the propriety of Defendants' unjustified demand that Plaintiff's employees without material unique involvement with the XAI brand be added as custodians. Rather, adding custodians for *Plaintiff* simply because *Defendants* did not meet their discovery obligations would flip the discovery rules on their head and penalize Plaintiff for conducting a robust initial collection and search.

Because the parties agreed not to designate custodians, Plaintiff gets to determine its custodians irrespective of Defendants' desire to engage on a unilateral fishing expedition after a year of discovery. Dkt. 54 at 20 (jointly striking N.D. Cal. templated custodian provision); *Wadeea v. Mercedes-Benz USA, LLC*, No. 24-CV-1587-H-DDL, 2025 WL 2309025, at *2 (S.D. Cal. July 21, 2025) ("[A]bsent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems most likely to possess responsive information and to search the files of those individuals."); *Hastings v. Ford Motor Co.*, No. 19-CV-2217-BAS-MDD, 2021 WL 1238870, at *2 (S.D. Cal. Apr. 2, 2021) (explaining that "[n]othing in Rule 34 requires . . . a producing party to accede to demands that particular custodians' files be searched"). To force the addition of custodians now, Defendants have the burden of showing the custodians each have unique material information not already available from the five existing custodians that proportionately justifies Plaintiff's supplemental collections, processing, review, and production costs. Defendants fall far short.

Custodians Batton and Saqib founded and have run Plaintiff's operations from inception in 2021. Among Plaintiff's employees (less than 50 at its largest), only Batton and Saqib had decision-making power as to the XAI brand, and they controlled the development, launch, promotion, and operation of XAI services. Plaintiff's consistent practice was for its employees to include Batton and/or Saqib in any consequential discussions concerning the XAI brand such that the two of them alone are sufficient custodians. Declaration of Tobias Batton ("Batton Decl.") ¶ 4. Batton's and Saqib's custodial documents have been collected and produced in this litigation. *See Radio Music License Comm., Inc. v. Glob. Music Rts., LLC*, No. CV 19-3957 TJH (ASX), 2020 WL 7636280, at *4–5 (C.D. Cal. Jan. 2, 2020) (denying motion to compel based on party declaration that employees' "typical practice is to copy [party]'s Executive Director, . . . who has retained these documents" where the party "has agreed to include [Director] as a custodian"); *see also Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS (TSH), 2021 WL 2109382, at *2 (N.D. Cal. May 25, 2021) (denying motion to compel new custodians in addition to five designated custodians as not proportionate). However, to ensure the collection's robustness, Plaintiff designated three additional custodians, each overseen by Batton or Saqib: Avo Simonian (XAI brand project management), Chris Powroznik (software engineer for XAI blockchain), and Jerry Kou (designer who created the SAI and XAI marketing materials). These five custodians exceed Plaintiff's custodial obligations.

Defendants fail to show otherwise, and their attempt to overburden Plaintiff with unnecessary additional document collection and review when Plaintiff has already satisfied Defendants' numerous RFPs is improper. Despite being a fraction of the size of Defendants, Plaintiff produced over 29,000 documents compared to Defendants' less than 10,000 documents. Harris, Ayala, and Salvesen appear on only 1.5%, 4.4%, and 4.9% of Plaintiff's documents, respectively, which undercuts their supposed relevance. However, picking custodians is not a purely mathematical exercise. Though Defendants maintain that these documents justify the inclusion of the new custodians, Defendants fail to provide specific, documented examples demonstrating the categories of unique information each proposed custodian supposedly had. Ex. F at 6–7; Ex. B at 1–2. Instead, Defendants transparently admit each potential custodian merely "appears on" a small subset of documents, conspicuously point to no documentary evidence that they possess *unique* information, and conclusorily disregard documentation from Plaintiff confirming their *lack of unique* information in favor of Defendants' unilateral speculation otherwise. *E.g.*, Ex. B at 3–4. That is not the law. *See Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, No. 22-CV-00676-HMSB, 2023 WL 3028088, at *1 (S.D. Cal. Apr. 20, 2023) (denying motion to compel addition of custodians where party could "not identify any distinct and unique discovery . . . that they were unable to obtain from the five other ESI custodians").

Out of Plaintiff's nearly 30,000 produced documents—and despite Defendants insisting Harris, Salevsen, and Ayala appear on a "large volume of documents," *supra*—they present no documents indicating any of the proposed custodians have unique, relevant documents. The sheer lack of evidence from Defendants in such a large volume of documents corroborates Plaintiff's representation that none has unique, material information. Even the scant documents Defendants attach to this letter undercut Defendants' argument. For example, Exhibit B does not show Harris was "leading discussions about Plaintiff's XAI game launches," *supra*, but merely that Harris began an email chain with a Decrypt Media employee *and Batton and Saqib*. Batton responded to the email immediately, taking ownership of the outreach. Ex. B. Worse is that Defendants ignore other documents confirming that Batton, *not* Harris, continued to lead future communications with Decrypt Media. Ex. L [redacted]; Ex M (Decrypt quoted Batton in article); Ex. N (Batton setting Decrypt meetings without Harris).

But Defendants' false reality is not limited to Harris. Salvesen did not "overs[ee] Ex Populus's contemplated sale of its Xai Trademark," *supra*. Rather than put forth any supporting evidence, Defendants inexplicably cite Plaintiff's conferral letter (Ex. E at 4-5) in which Plaintiff included a screenshot of the short-lived "Sell Xai Trademark" task—showing *Batton* was the task "Owner." It is also clear from the task screenshot that the task was promptly closed more than 2 years ago without any actions taken or documents associated with it. Documents aside, it strains

reason to think a project manager like Salvesen would control the sale of Plaintiff's XAI trademark, rather than Batton as Plaintiff's CEO. As to a rebrand away from XAI, Defendants are aware that those RFPs are in RFP Set No. 4 that Plaintiff discusses below, and regardless, have provided no support for any unique knowledge. As to Ayala, Defendants' Exhibit D shows Ayala did not respond to external outreach without literally copy/pasting what he received from a third-party to *three* other custodians (Simonian, Powroznik, and Kou), who consult on how to respond.

It is unsurprising Defendants cannot put forth evidence to meet their burden, given the proposed custodians were not employed or working for Plaintiff in an appreciable manner during the period "key" to the "dispositive," *supra*, issue of trademark priority (i.e., through July 12, 2023 when Musk announced X.AI and Plaintiff filed its XAI trademark application establishing a priority date). Ayala and Salvesen were not hired until February 2024—nearly a year after Batton and Saqib picked the XAI name and after the XAI blockchain had already launched. Batton Decl. ¶ 5. While Harris signed on with Plaintiff as an employee in April 2023, he remained employed by and actively working for Pixar through the end of 2023 and did not substantially begin his role leading development of the game Final Form until around January 2024. *Id.* ¶¶ 6–7. None of these individuals were—nor could have been—meaningfully, let alone uniquely, involved in the "launch of the XAI products," "marketing strategy" at launch, "XAI product strategy" at launch, or "advertising of the XAI products on Plaintiff's website" at launch, as Defendants theorize. To the extent they were involved in those topics well after launch, at least one—though generally many more—current custodian would have coextensive material knowledge and documents.

Plaintiff has already expended substantial resources collecting, reviewing, and producing over 29,000 documents and responding to Defendants' baseless meet and confer letters. Plaintiff's document collection from its five custodians and various company repositories is more than sufficient. Given the strength of Plaintiff's claims on the merits, Defendants have resorted to a war of attrition. Their goal is to overburden a smaller company by needlessly increasing litigation costs. The Court should deny Defendants' motion.

B. *Plaintiff Has Been and Continues to Review and Produce Documents Responsive to Defendants' 4th RFPs.*

The parties expressly negotiated the Stipulated Order Re: Discovery of Electronically Stored Information, including that "[t]he Parties agree to produce documents on a rolling basis." Dkt. 54 at 7 (the "ESI Protocol"). Plaintiff timely responded to the 4th RFPs pursuant to party agreement, stating "Plaintiff will make its document production by electronic means and in stages beginning on or before September 28, 2026." As stated, Plaintiff made its first production of documents responsive to the 4th RFPs on September 28, 2026. Plaintiff is diligently continuing to collect, review, and designate documents responsive to the 4th RFPs for production and will produce the documents on a rolling basis as soon as feasible per the ESI Protocol.

Defendants now highlight 10 of the 50 RFPs and rush to the Court despite Plaintiff's representations that it was still collecting and reviewing documents. Defendants misrepresent Plaintiff's position as "refusing to produce those documents until a response date is negotiated by separate counsel in response to a document subpoena in a separate matter." During conferral, Plaintiff said it could not provide a date certain to complete its production due to the broad scope of RFPs at issue, but to be transparent, confirmed that it was moving diligently because Defendant X Corp. subpoenaed overlapping documents in a separate state court litigation (in which Plaintiff is not a party) and the documents were being collected and reviewed concurrently.

Plaintiff was not and is not making its production contingent on its response to that separate subpoena. Notably, there is no operative case schedule or document production deadline. Nevertheless, Plaintiff will continue to collect and review responsive documents and will produce them as soon as reasonably possible. Defendants' needless motion should be denied.

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all the signatories.

Dated: November 25, 2026

*/s/ Megan K. Bannigan*
Megan K. Bannigan